UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------X
THOMAS SABELLA and KAREN SABELLA,

                Plaintiffs,

    -against-

NORTHEAST GENERATION SERVICES
COMPANY and NORTHEAST UTILITIES,

                Defendants.
----------------------------------X

Civil Action Docket
No. 3:02 CV 2008 (SRU)

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

<u>**PRELIMINARY STATEMENT**</u>

    This memorandum of law is submitted in support of the Plaintiffs', Thomas Sabella and Karen Sabella (hereinafter referred to collectively as "the Plaintiffs" or the "Sabellas"), motion for an Order pursuant to Rule 56 of the Federal Rules of Civil granting the Plaintiffs' partial summary judgment against the defendants Northeast Generation Services Company and Northeast Utilities, (hereinafter referred to as "NG" or "NU" respectively, or collectively as the "Defendants"),on the issue of defendants' liability on both causes of action alleged in the complaint, upon the grounds that no triable issue of fact exists which would preclude the entry of judgment in favor of the Sabellas and that the movant is entitled to judgment as a matter of law; and

directing that a separate hearing be held by the Court in order to assess the actual amount of Plaintiffs' damages in the instant action, together with such other, further and different relief as this Court may deem just and proper in the circumstances and the costs, disbursements, and interest of this action   The factual underpinnings of this action are fully contained in the Plaintiffs' Local Rule 56 (a)1 Statement and Affidavit annexed hereto, and will not be repeated herein[1].   This memorandum shall only address the legal issues relating to the Sabella's instant motion for partial summary judgment.

I

**PLAINTIFFS ARE ENTITLED**
**TO PARTIAL SUMMARY JUDGMENT**

A.    **Plaintiffs Satisfy the Burden of Proof to Obtain Summary Judgment**

The absence of any undisputed factual issues makes summary judgment appropriate at this time.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no <u>genuine</u> issue as to any <u>material</u> fact and that the

---

[1]  Plaintiffs rely on the following sources for the undisputed facts relevant to this motion: Plaintiffs' Local Rule 56 (a)1 Statement dated December 8, 2003 (hereinafter the "Rule 56 (a)1 Statement"), the Affidavit of Thomas Sabella, sworn to on December 8, 2003 (hereinafter the "Sabella Aff."), and the exhibits annexed thereto (hereinafter the "Exhibits").

moving party is entitled to judgment as a matter of law. *Puglisi v. Underhill Park Taxpayers Assoc.*, 1997 U.S. App. LEXIS 27260, 6 (2nd Cir. 1997), (*quoting* Fed. R. Civ. P. 56(c)). "While the moving party has the burden of demonstrating that there are no genuine issues of material fact, 'a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but... must set forth specific facts showing that there is a genuine issue for trial'..." *Puglisi supra* at 6; *see* also Fed. R. Civ. P. 56(e).

Here, the supporting affidavit, Rule 56 (a) 1 Statement, and documentary evidence submitted on this motion establish that the Sabellas are entitled to partial summary judgment as to the issue of defendants' liability to the Sabellas' claims for breach of contract against Northeast Generation Services Company (hereinafter "NG"), and breach of performance guaranty against Northeast Utilities (hereinafter "NU"). The moving papers demonstrate that there are no genuine issues of material fact and that the Plaintiffs have established the essential elements for breach of contract claims and thus, are entitled to judgment as a matter of law. Accordingly, the Plaintiffs satisfy their burden of proof for summary judgment.

B.    **Plaintiffs' Have Established a Claim For Breach of Contract Against NG**

In order to establish a breach of contract claim against NG, the Plaintiff must establish the following four elements: (1)

formation of an agreement between the Plaintiffs and NG; (2) performance of the contract by the Plaintiff; (3) breach of the agreement by NG; and (4) damages caused by the breach. *Bouchard v. Sundberg*, 2003 Conn. App. LEXIS 475, 16 (Conn. App. Ct. 2003), *citing to Maloney v. Connecticut Orthopedics, P.C.*, 47 F. Supp.2d 244, 249 (D. Conn. 1999). The undisputed facts in this case demonstrate that the Plaintiffs have established the essential elements of a breach of contract claim against NG. Accordingly, the Plaintiffs' motion for partial summary judgment should be granted.

> 1. <u>The Lease Between the Plaintiffs and NG is a Valid Contract and Must Be Enforced According to its Terms</u>

The Plaintiffs satisfy the first element for a breach of contract claim against NG since there is a valid Lease between the parties. The Lease constitutes a written contract. *Central New Haven Dev. Corp. v. La Crepe, Inc.*,177 Conn. 212, 214-15, 413 A.2d 840, 842 (Conn. 1979), and *Collins v. Sears, Roebuck and Co.*, 164 Conn. 369, 373, 321 A.2d 444, 448 (Conn. 1973). Moreover, it is well established that clear and unambiguous language of a contract, must be given effect according to its terms. *Water and Way Properties v. Colt's Mfg. Co., Inc.*, 230 Conn. 660, 667-8, 646 A.2d 143, 146-7 (Conn. 1994); *Collins supra* 164 Conn. at 373-4, 321 A.2d at 448; and *Riverbend Executive Ctr. Inc. v. Modern Telecommunications (CT), Inc.*, 2000 Conn. Super. LEXIS 1398, 14

4

(Conn. Super. Ct. Stamford-Norwalk Dist. 2000).

In this case, the defendant, NG entered into a written Lease agreement with Plaintiffs' predecessors in title, Har-Flan Associates ("hereinafter referred to as "Har-Flan"), on May 13, 1999, for the rental of commercial space at 273 Dividend Road, Rocky Hill, Connecticut (hereinafter referred to as "the Premises"). *See* Rule 56 (a)1 Statement at ¶2. On September 29, 2000, the Sabellas became the successors to and assigns of Har-Flan under the Lease by way of an Assignment Agreement. *See* Rule 56 (a)1 Statement at ¶6; and Sabella Aff. at ¶¶ 3,9,10 and Exhibits annexed thereto. Therefore, there is privity of contract between NG and the Sabellas. As there is a valid Lease between the Plaintiffs and NG, the Plaintiffs have satisfied the first element for a breach of contract claim.

2. <u>NG Breached the Lease by Failing to Restore Portions of the Premises to the Original Condition as Required by Paragraph (12) of the Lease</u>

NG materially breached the Lease by failing to comply with the restoration clause set forth in paragraph (12) of the Lease. Paragraph (12) of the Lease permitted NG to make alterations to the premises. However, paragraph (12) also expressly states that, "[a]t the end of the lease term the Tenant agrees <u>to restore the premises to original condition</u>, if requested by Landlord." *See* Exhibit D of Rule 56 (a)1 Statement at ¶12. The language of the

5

restoration clause at paragraph (12) is clear and unambiguous and there is nothing within the Lease that contradicts or modifies that contractual obligation.

NG took possession of the premises on or about June 1, 1999. *See* Rule 56 (a)1 Statement at ¶7. It is undisputed that during its occupancy, NG made various alterations to the premises. For example, William J. Nadeau, a Vice President at NG, acknowledged in his deposition that NG made alterations to the premises which included: removal of the mezzanine which reduced the building square footage by approximately 1,700 square feet; construction of partition areas in the warehouse space of the premises; construction of interior walls; construction of a lunchroom; removal of restroom facilities; installation of air conditioning units placed in exterior walls; the consolidation of electric meters; changes to the telecommunications systems; and the installation of a ramp in the middle of the premises. *See* Rule 56 (a)1 Statement at ¶12. *See also* deposition testimony of real estate broker, Jay L. Morris, regarding NG's alterations to the premises at Exhibit I annexed to the Rule 56 (a)1 Statement.

The lease term ended on July 31, 2002, and NG vacated the premises without restoring any portion of the premises to the original condition. *See* Rule 56 (a)1 Statement at ¶19. Indeed, NG has admitted that no efforts were made by the defendants to restore

the premises.  *See* Rule 56 (a)1 Statement at ¶18.  Thus, there is

no issue of fact...nor can there be any...that NG acknowledged that

it made alterations to the premises, and admitted that it did not

restore the premises. Accordingly, the Plaintiffs have established

the second element for a breach of contract claim.

3.   <u>The Plaintiffs Have Fully Performed Their</u>
     <u>Obligations Pursuant to the Lease</u>

The Plaintiffs have performed all of their obligations under

the Lease.  Paragraph (12) of the lease specifically states that

the Tenant must restore the premises to original condition "if

requested by the Landlord."  Thus, this clause also establishes the

Landlord's obligation to give notice to the Tenant regarding

restoration of the premises.  The Plaintiffs have met this

obligation by giving NG timely and repeated notice to restore the

premises to the original condition.

Pursuant to the early termination clause set forth in the

Lease, NG gave the Plaintiffs written notice of its intent to

terminate the Lease effective July 31, 2002. *See* Rule 56 (a)1

Statement at ¶¶ 15,16 and Exhibits annexed thereto.  Prior to the

termination of the Lease term and pursuant to paragraph (12) of the

Lease, Plaintiff, Thomas Sabella, made several written requests to

the defendant, NG to restore portions of the premises to the

original condition.  *See* Sabella Aff. at ¶13.  In addition, Mr.

Sabella contacted James P. Donohue, Manager of Administrative Services at NG, and an attorney in the law department at NG, via telephone in order to follow up on his requests that NG restore the premises. *Id.* However, the defendant, NG, chose to ignore Mr. Sabella's repeated requests and demands, and failed to comply with their express obligation under paragraph (12) of the Lease. *See* Sabella Aff. at ¶¶ 14, 15. Moreover, the Defendants have never asserted as an affirmative defense that the Plaintiffs breached or failed to perform their obligations under the terms of the Lease. *See* Exhibit C annexed to Rule 56 (a)1 Statement. Since the Plaintiffs have fully performed their obligations under the Lease, the Plaintiffs have established the third element for a breach of contract claim.

### 4.  The Plaintiffs Have Been Damaged

The Plaintiffs have satisfied the last requirement for a breach of contract claim by having incurred damages as a direct result of NG's material breach of the Lease agreement. In particular, the Plaintiffs have suffered three types of damages stemming from NG's breach. In determining the appropriate measure of damages, basic contract principles apply where the action is one for breach of a lease. *Rokalor, Inc. v. Connecticut Eating Enters., Inc. et al.*, 18 Conn. App. 384, 389, 558 A.2d 265,268 (Conn. App. Ct. 1989). Thus, it is well established that the

proper measure of damages, as in any other contract action, is that the injured party should be placed in the same position which he would have been in if the contract had been fully performed. *See Rokalor supra; Vespoli v. Pagliarulo*, 212 Conn. 1, 4, 560 A.2d 980, 981 (Conn. 1989); *Simkins Indus., Inc. v. Bertino*, 1991 Conn. Super. LEXIS 2697, 5 (Conn. Super. Ct. New Haven Dist. 1991); *Fox Run Mall Assocs., L.P. v. Lawler et al.*, 2001 Conn. Super. LEXIS 457,12 (Conn. Super. Ct. Hartford Dist 2001), *affirmed* 68 Conn. App. 913, 796 A.2d 634 (Conn. App. Ct. 2002); *Heyman v. The Spectacle, Inc. et al.*, 1992 Conn. Super. LEXIS 2726, 4 (Conn. Super. Ct. Derby Dist. 1992); and *Enfield Medical Ctr. Assocs. v. Cain*, 1984 Conn. Super. LEXIS 359, 9 (Conn. Super. Ct. Hartford-New Britain Dist. 1991). Generally, if a lease is breached, the landlord is entitled to recover damages which naturally flow from such a breach. *Id.* In this case, those damages are: (1) the cost to restore portions of the premises to the original condition prior to NG's occupancy; (2) lost rent for the premises due to the inability to re-rent the premises to new tenants; and (3) attorneys' and expert witness fees.

### (i) The Plaintiffs Must Incur Substantial Costs to Restore Portions of the Premises to the Original Condition

First, the Plaintiffs must now incur substantial costs and expenses to restore portions of the premises to the original

condition, since the defendants have failed to do so.  *See* Sabella
Aff. at ¶17, for a list of the specific items that Plaintiffs must
now restore and or remove from the premises in order to get the
premises back to the original condition in which it existed prior
to NG's alterations made thereto.   The Plaintiffs received an
estimate from a contractor in the Rocky Hill, Connecticut area, who
advised them that the cost to restore portions of the premises to
their original condition prior to NG's occupancy would be
approximately, $283,730.00[2].  *See* Sabella Aff. at ¶18.

The cost of restoration of the premises to the original
condition is the proper theory of law for calculating damages in
this cases because paragraph (12) of the lease expressly requires
that, "[a]t the end of the lease term the Tenant agrees to restore
the premises, to original condition, if requested by Landlord."
*See* Rule 56(a)1 Statement at ¶8.  To not give effect to this clear
provision in the lease, would in essence, require the Court to
rewrite the terms of the Lease.

It should be noted that in this case, Connecticut law applies
as Paragraph thirty-eight (38) of the Lease explicitly states that
the Lease "shall be construed under the laws of the State of

---

[2]   It should be noted that this figure is submitted in order
to demonstrate the existence of Plaintiffs' damages, however, as
discussed later herein, the Plaintiffs respectfully request a
separate hearing be held by the Court in order to calculate the
actual amount of Plaintiffs' damages in this action.

Connecticut..." *See* Rule 56(a)1 Statement at ¶23. Accordingly, the Court must review the decisions of Connecticut courts, which have provided guidance on the issue of the contractual provision to restore property in an action for breach of a lease agreement. For instance, the court in *Crossley v. Ortman*, 1987 Conn. Super. LEXIS 105, 23 (Conn. Super. Ct. New Haven Dist. 1987), distinguished between a lease covenant to restore and the general covenant to return property in good condition. The decision's language confirmed the need for a party to meet its express obligations under a contract, including the restoration of premises to the original condition.[3]

Similarly, the court in *Terlizzi v. Linsley et al.*, 9 Conn. App. 434, 437, 519 A.2d 1210, 1211-12 (Conn. App. Ct. 1987), ruled that an amendment to a lease containing a restoration clause[4] was controlling and therefore, the lessee was obligated to return the property to its original condition at the termination of the lease. In addition, permission to make alterations to premises is not without limitations. *Carrano v. Shoor et al.*, 118 Conn. 86, 99,

---

[3] The Court in *Crossley*, noted that "[a] tenant is not required to remove the improvements made with the landlord's consent <u>unless the lease so provides</u>." (Emphasis added) *Id.*

[4] The restoration clause in the amended lease provided that, "[t]he lessee agrees that upon termination of this lease or any renewals thereof, he will remove any equipment installed by him and restore the premises to the same condition that they are in upon commencement of this lease."

171 A. 17, 23 (Conn. 1934). For example, the court in *Carrano* held that the lease provision, allowing the tenant to make alterations to the premises, did not permit the tenants from making changes to the premises which would preclude restoring the building to its original condition. *Id.*

The courts have awarded restoration damages to landlords in actions for breach of lease agreements. For example, in *Lizotte v. Robinson*, 1987 Conn. Super. LEXIS 56, 6, (Conn. Super. Ct. Hartford-New Britain Dist. 1987), the Court noted that the lease and general case law required the defendants upon vacating to restore the premises to its condition at inception of occupancy, and awarded plaintiff certain renovating expenses. Similarly, in *Riverbend Executive Center Inc. v. Modern Telecommunications, Inc.*, 2000 Conn. Super. LEXIS 1398 (Conn. Super. Ct. Stamford-Norwalk Dist. 2000), the court found that the defendant breached the lease agreement when it removed certain fixtures[5], and awarded the landlord damages.

In anticipation of the defendants' argument that damages are limited to the diminution of value of the premises, the instant

---

[5] The lease provided in relevant part that, "...upon removal of any such equipment and fixtures from the Demised Premises or upon removal of other installations as may be required by Landlord...Tenant shall immediately and at its expense, repair and restore the Demised Premises to the condition existing prior to installation..." *Riverbend supra*, 2000 Conn. Super. LEXIS at 18.

case is distinguishable from cases where the court held that the cost of restoration should not be awarded to the landlord. For example, in *Occhialini v. Schmelter*, 1991 Conn. Super. LEXIS 1461 (Conn. Super. Ct. Hartford-New Britain District 1991), the landlord and tenant agreed that the tenant could make renovations to the premises, however, a lease was never executed between the parties. The tenant's renovations to the premises included the removal of a wall between two separate residential units. The court held that the landlord was not entitled to recover cost of restoration damages because there was <u>no agreement</u> between the parties that the defendant would restore the premises to separate units before or after vacating. In contrast to the facts in *Occhialini*, here, a lease exists between the parties which allows the tenant to make "improvements", but <u>expressly requires</u> that the premises be "restored" to their original condition at the end of the lease term, if requested by the landlord. *See* Exhibit D annexed of Rule 56 (a)1 Statement at ¶12. Therefore, the proper measure of damages in this case is the cost of restoration of the premises to the original condition as agreed to by the parties.

Similarly, the facts of the present case are distinguishable from *Spera v. Audiotape Corporation*, 1 Conn. App. 629, 474 A.2d 481 (Conn. App. Ct. 1984), where the court held that the cost of restoration was not the proper measure of damages for the landlord.

Unlike the present case, the Lease between the parties in *Spera*, did not explicitly state that the tenant was required to restore the premises to the original condition at the termination of the Lease with regard to the tenant's <u>alterations</u> to the property.[6] Regarding the landlord's claim for restoration of the premises, the tenant argued that the removal of partitioning walls did not fall under paragraph 21 of the lease.[7]   Moreover, the present case does not involve a significant risk of unreasonable economic waste. Compare *Spera v. Audiotape Corp.*, 1 Conn. App. 629, 474 A.2d 481 (Conn. App. Ct. 1984).   Here, the cost of restoration of the premises to the original condition will not exceed the former value

---

[6]   The defendant's alterations in *Spera*, involved the removal of office space including walls, ceilings, tile floors, lavatories, light fixtures, and constructing a cement pad surrounded by a chain link fence at the front of the building. *Spera supra* ,1 Conn. App. at 630-1, 474 A.2d at 483. Paragraph 4 of the lease merely stated that the defendant had the right to make improvements and alterations to the premises, "but only after the consent in writing by the lessor; it being expressly understood however that such consent shall not be withheld unreasonably.  *Spera supra*,1 Conn. App. at 630-1, 474 A.2d at 483.

[7]   Paragraph 21 of the lease only provided that, "...the Lessee shall remove all of its fixtures, machinery, equipment, and additions made to said premises and shall in so doing put the premises back in the same condition as they are now in.... [u]pon the failure of the Lessee to remove the above mentioned items within thirty (30) days after the expiration of this Lease, the Lessor may remove same at the expense of the Lessee."  On appeal, the Court was unable to review the tenant's claim of error regarding the restoration of the premises because the tenant failed to present the court with an adequate appellate record to review the basis of the trial court's decision. *Spera supra*, 1 Conn. App. at 632, 474 A.2d at 483.

of the building.  Finally, NG's alterations to the premises do not significantly enhance the value of the property over its value before the injury because the premises were originally designed to be used predominantly as warehouse space, and NG's alterations customized the premises for its unique and exclusive needs, namely the service and maintenance of electrical power plants.  *See* Sabella Aff. at ¶11.  Accordingly, the proper measure of damages in this case, is the cost of restoration of the premises to the original condition prior to NG's occupancy.

### (ii)  **The Plaintiffs Have Lost Rent for the Premises**

Plaintiffs have also incurred damages in the form of lost rent due to the inability to re-rent the premises to new tenants as a result of NG's customized alterations made to the premises and its refusal to restore them to their original condition.  *See* Sabella Aff. at ¶20.  Paragraph twenty-five (25) B of the lease provides for the recovery of liquidated damages by the landlord upon termination of the Lease.  Rule 56 (a)1 Statement ¶24.  This provision necessarily includes Plaintiffs' lost rent for the premises which until recently, have remained vacant and unrentable due to NG's failure to restore as required by the Lease.

In sum, NG's alterations modified the premises to its very unique and specific needs, (i.e., the service and maintenance of electrical power plants), such that very few, if any, prospective

15

tenants could utilize the space within the premises following NG's alterations thereto. For example, the loss of approximately 1,700 square feet of rentable office space as a result of NG's removal of the mezzanine level, combined with the removal of a set of bathrooms, and the reduction of open warehouse space by NG during its occupancy, have made it difficult to attract new tenants to the premises who are predominantly seeking open commercial warehouse space. *See* Sabella Aff. at ¶19. *See also* deposition testimony of real estate broker, Mr. Morris, regarding the difficulty of re-renting the premises to new tenants primarily because of NG's changes to the combination of office space and warehouse space within the premises, annexed to the Rule 56 (a)1 Statement at Exhibit R.

Up until recently, the premises have remained vacant and unrentable due to NG's failure to restore the premises as required by the Lease. *See* Sabella Aff. at ¶19. Only as of July 1, 2003, were Plaintiffs able to rent out 1/4 of the premises to a new tenant, with significant restoration costs incurred by the Plaintiffs. *Id.* However, the remaining portion of the premises remains vacant. As a result, to date, the Plaintiffs have incurred damages in the form of lost rent for the premises in the amount of

$295,000.00[8].  *See* Sabella Aff. at ¶20.

### (iii) The Plaintiffs Have Incurred Attorneys' Fees and Expert Witness Fees

Plaintiffs have incurred attorneys' fees and expert witness fees in connection with this action, and are entitled to recoup them according to the terms of the Lease agreement.  *See* Sabella Aff. at ¶21.  Paragraph forty-five (45) of the Lease provides that attorneys fees and expert witness fees are entitled to be recovered to a prevailing party who has taken action to enforce the terms of the Lease.  *See* Rule 56 (a)1 Statement at ¶25.  "Where a party has contracted to pay attorneys fees in the event of a default under the terms of the contract, courts may award reasonable counsel fees..." *EnfieldMedical Ctr. Assocs. v. Cain*, 1984 Conn. Super. LEXIS 359, 12 (Conn. Super. Ct. Hartford-New Britain Dist. 1991); *Boulevard Assocs. v. Sovereign Hotels, Inc.*, 861 F. Supp. 1132, 1140-41 (D. Conn. 1994).  Moreover, attorneys fees are an element of damages in a breach of contract case, and a plaintiff is not precluded from claiming such fees.  *Enfield Medical Ctr. Assocs. supra*, 1984 Conn. Super. LEXIS at 13.

In this case, both attorneys fees and expert witness fees have been claimed in Plaintiffs' prayer for relief and there is an

---

[8]  This figure is submitted in order to demonstrate the existence of Plaintiffs' damages as a result of NG's breach of the lease.

express provision in the Lease which allows for the recovery of such fees. At a hearing on damages, the Plaintiffs can provide the Court with detailed invoices from Plaintiffs' counsel's regarding Plaintiffs' legal fees and expenses, documentation upon which the Court may appropriately rely in determining "reasonable attorney's fees" *Heyman v. The Spectacle, Inc. et al.*, 1992 Conn. Super. LEXIS 2726, 5 (Conn. Super. Ct. Derby Dist. 1992). As discussed herein, NG is liable to the Plaintiffs for breach of the Lease because it failed to restore portions of the premises to the original condition. Accordingly, Plaintiffs are fully entitled to recoup attorneys fees, expert witness fees, costs, expenses, and interest associated with the instant action as provided for in the Lease between the parties.

C.    **Plaintiffs' Have Established a Claim For Breach of Performance Guaranty Against NU**

The Plaintiffs also have a valid claim for breach of Performance Guaranty against the defendant, NU. "[A] guarantee is a promise to answer for the debt, default or miscarriage of another", *Regency Savings Bank v. Westmark Partners*, 59 Conn. App. 160, 164, 756 A.2d 299 (Conn. App. Ct. 2000), and "is merely a species of contract". *Garofalo v. Squillante*, 60 Conn. App. 687, 694, 760 A.2d 1271, 1275 (Conn. App. Ct. 2000), *cert. denied*, 255 Conn. 929, 767 A.2d 101 (Conn. 2001). On June 11, 1999, NU

18

executed a Performance Guaranty with Plaintiffs' predecessors in title, Har-Flan. *See* Rule 56 (a)1 Statement at ¶4. Thereafter, the Plaintiffs also became the successors and assigns to the Performance Guaranty through its Assignment Agreement with Har-Flan. *See* Rule 56 (a)1 Statement at ¶6. Accordingly, there is privity of contract between NU and the Plaintiffs.

Pursuant to the terms of the Performance Guaranty, NU irrevocably and unconditionally guaranteed full and prompt performance of NG's obligations under the Lease. *See* Rule 56 (a)1 Statement at ¶5. In addition, the terms of the Guaranty provided that NU, irrevocably, unconditionally, and expressly waived notice with respect to any of the Guaranteed Obligations under the Lease and any requirement that the Sabellas first proceed against NG with respect to their claims. *See* Exhibit E annexed to the Rule 56 (a)1 Statement. As discussed in detail above, NG was obligated under paragraph (12) of the Lease to restore the premises to the original condition prior to its occupancy, and refused and otherwise failed to do so. *See* Rule 56 (a)1 Statement at ¶18. Similarly, NU has also admitted in its Responses to Plaintiffs' First Set of Interrogatories, that it too, has made no efforts to restore the premises. *Id.* Accordingly, NU as Guarantor, has failed to perform the obligations of its indirect subsidiary, NG under the terms of the Lease.

19

Finally, as a result of NU's failure to perform its duties required under the Guaranty, the Plaintiffs have sustained damages. As discussed in detail above, the Plaintiffs have incurred three types of damages in connection with this action, namely, (1) the cost to restore portions of the premises to the original condition prior to NG's occupancy; (2) lost rent for the premises due to the inability to re-rent the premises to new tenants; and (3) attorneys' and expert witness fees. Accordingly, the Plaintiffs have also established a valid claim for breach of Performance Guaranty against NU, and thus, the Plaintiffs' motion for partial summary judgment should be granted.

D.    **PLAINTIFFS' REQUEST A HEARING ON DAMAGES**

The Plaintiffs respectfully request that a separate hearing be held in order to determine the actual amount of Plaintiffs' damages in this action. If the Court finds liability on behalf of NG and NU, the only outstanding issue to resolve in this matter, is the actual amount of Plaintiffs' damages which can be resolved in several trial days.

## II

### THE DEFENDANTS' AFFIRMATIVE DEFENSE OF UNJUST ENRICHMENT FAILS AS A MATTER OF LAW

The defendants affirmative defense of unjust enrichment is without merit and is no defense to plaintiffs' clear presentation.

In their answer, the defendants assert that the Plaintiffs' claims are barred by the doctrine of unjust enrichment. *See* Answer under Second Affirmative Defense. It is well established however, that "unjust enrichment is viable as a counterclaim, but it is improper when asserted as a special defense." *Republic Credit Corp. v. McCarty*, 2000 Conn. Super. LEXIS 2579, 5-6 (Conn. Super. Ct. Stamford-Norwalk Dist. 2000); and *Kirik v. Melief*, 1996 Conn. Super. LEXIS 3440,9 (Conn. Super. Ct. Fairfield Dist. 1996). Furthermore, "[i]rrespective of any facts proved, this defense is without merit because unjust enrichment is a cause of action which permits recovery; it is not a defense which precludes recovery by another party". *Avon Financial v. Dolan*, 1996 Conn. Super. LEXIS 2993, 12 (Conn. Super. Ct. Hartford-New Britain Dist. 1996), *citing to Thibault v. Buckmiller*, 1990 Conn. Super. LEXIS 2142,4 (Conn. Super. Ct. Waterbury Dist. 1990). In this case, the Sabellas have asserted a cause of action against the defendants for breach of contract and breach of performance guaranty. Consequently, the defendants may not allege unjust enrichment as a special defense and it may be disregarded entirely.

## CONCLUSION

WHEREFORE, it is respectfully requested that the Plaintiffs' instant motion for partial summary judgment be granted in its entirety, together with such other, further and different relief as this Court may deem just and proper in the circumstances and the costs, disbursements, and interest of this action. Plaintiffs also respectfully request that a separate hearing be held by the Court in order to assess the actual amount of Plaintiffs' damages, in connection with this action.


Dated:      White Plains, New York
            December 8, 2003


                        COLLIER, HALPERN, NEWBERG,
                        NOLLETTI & BOCK, LLP
                        Attorneys for Plaintiffs

            By:         _____
                        Harry J. Nicolay, Jr. (CT24875)
                        A Member of the Firm
                        One North Lexington Avenue
                        White Plains, NY 10601
                        Telephone: (914) 684-6800
                        Facsimile: (914) 684-6986

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------X
THOMAS SABELLA and KAREN SABELLA,

               Plaintiffs,

     -against-

NORTHEAST GENERATION SERVICES
COMPANY and NORTHEAST UTILITIES,

               Defendants.
---------------------------------X

            Civil Action Docket
            No. 3:02 CV 2008 (SRU)

### CERTIFICATE OF SERVICE

    This is to certify that a copy of the foregoing Plaintiffs'
Memorandum of Law in Support For Partial Summary Judgment has been
served upon the following counsel of record by first class mail,
postage prepaid this 10th day of December, 2003.


To:  Ann H. Rubin, Esq.
    Carmody & Torrance LLP
    195 Church Street, 18th Floor
    P.O. Box 1950
    New Haven, Connecticut 06509-1950


    Duncan R. MacKay, Esq.
    Northeast Utilities Service Company
    P.O. Box 270
    Hartford, Connecticut 06141-0270


                            _____
                            Harry J. Nicolay, Jr. (CT24875)