UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS SABELLA and KAREN SABELLA, | : CIVIL ACTION NO.<br>: 3:02 CV2008 (SRU) |
| Plaintiffs, | : |
| VS. | : |
| NORTHEAST GENERATION SERVICES<br>COMPANY and NORTHEAST UTILITIES, | : DECEMBER 29, 2003 |
| Defendants. | : |

**LOCAL RULE 56(a)(1) STATEMENT OF NORTHEAST GENERATION
SERVICES COMPANY AND NORTHEAST UTILITIES IN SUPPORT OF
THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56(a)(1) and in support of their Cross-Motion for Summary Judgment, the defendants, Northeast Generation Services Company ("NGS") and Northeast Utilities ("NU"), hereby submit the following statement of material facts as to which NGS and NU contend there are no genuine issues to be tried.

1.  Defendant NGS, a corporation organized and existing under the laws of the State of Connecticut, and Har-Flan Associates ("Har-Flan") entered into a written lease agreement, dated May 13, 1999 (the "Lease"). See Complaint at ¶6; Answer at ¶6. A copy of the Lease is attached hereto as Exhibit A. A copy of the plaintiffs' Complaint, filed on November 13, 2002, is attached hereto as Exhibit B. A copy of the defendants' Answer, dated January 13, 2003, is attached hereto as Exhibit C.

2.  Under the Lease, NGS rented from Har-Flan space in a 29,700 square foot commercial building located at 273 Dividend Road, Rocky Hill, Connecticut (the

{W1281465}

CARMODY & TORRANCE LLP
Attorneys at Law
195 Church Street
Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

"Premises") for a term of sixty-two months commencing on June 1, 1999 and ending on July 31, 2004. See Ex. A, Lease at ¶¶1-2.

3. On or about June 1, 1999, NGS entered into possession of the Premises and initially rented 24,500 square feet of the Premises. See Ex. B, Complaint at ¶15; Ex. C, Answer at ¶15; and Ex. A, Lease at ¶1.

4. On or about June 11, 1999, defendant NU, a business trust formed and existing under the laws of the Commonwealth of Massachusetts, executed a performance guaranty of NGS's obligations under the Lease. See Ex. B, Complaint at ¶13; Ex. C, Answer at ¶13. A copy of the Performance Guaranty is attached hereto as Exhibit D.

5. Paragraph 12 of the Lease permitted NGS to make alterations to the Premises with the approval of the landlord. See Ex. A, Lease at ¶12. Paragraph 12 of the Lease also contained a restoration clause, which provided in relevant part:

> "Prior to the start of any new construction, the Tenant shall provide a copy of the scope of work to the Landlord and name(s) of contractors for approval, which shall not be unreasonably withheld. All work must comply with state and local building codes and be inspected and approved by local official. At the end of the lease term the Tenant agrees to restore the Premises to original condition, if requested by Landlord." See Ex. A, Lease at ¶12.

6. During its tenancy, NGS, with the permission of the landlord, made numerous improvements to the Premises. See Deposition of William J. Nadeau, Vice President and Chief Operating Officer of NGS, at 53, 87. Excerpts from Mr. Nadeau's deposition are attached hereto as Exhibit E. See also Affidavit of James Donohue, Services Manager of NGS, at ¶4. A copy of Mr. Donohue's affidavit is attached hereto as Exhibit F.

{W1281465}

-2-

CARMODY & TORRANCE LLP
Attorneys at Law
195 Church Street
Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

7. Under the Lease, NGS had a right of first refusal to rent approximately 5,207 square feet of additional space that was adjacent to the Premises. See Ex. A, Lease at ¶30.

8. On or about October 19, 1999, pursuant to its right of first refusal set forth in the Lease, NGS exercised its right to lease the remaining 5,207 square feet of the Premises. See Ex. B, Complaint at ¶18; Ex. C, Answer at ¶18. A copy of the agreement governing NGS's lease of the additional 5,207 square feet is attached hereto as Exhibit G.

9. By a warranty deed, dated September 29, 2000, Har-Flan sold the Premises to the plaintiffs Thomas Sabella and Karen Sabella (collectively, the "Sabellas"). A copy of the warranty deed is attached hereto as Exhibit H.

10. On September 29, 2000, Har-Flan also assigned the Lease and the Performance Guaranty to the plaintiffs. A copy of the Assignment is attached hereto as Exhibit I.

11. Many of NGS's changes to the Premises were designed to make the facility compliant with relevant municipal codes and other legal requirements regarding handicapped accessibility. For example, the ramp that NGS installed was legally required in order to give disabled employees access to the facility, and NGS's changes to the Premises' bathroom facilities included installing handicapped accessible restroom facilities, which the Premises had previously lacked. In addition, NGS's changes to the Premises' electrical, telecommunications, and air conditioning systems were upgrades to those systems. See Ex. E, Deposition of William Nadeau at 53, 87.

12. NGS removed stairway access to a mezzanine existing on the Premises in

CARMODY & TORRANCE LLP   195 Church Street
Attorneys at Law   Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

order to bring the mezzanine into compliance with applicable building codes and other legal requirements. NGS did not remove the mezzanine from the Premises. After NGS rebuilt the mezzanine floor space, it contained approximately the same number of square feet of floor space as it had previously. See Ex. F, Affidavit of James Donohue at ¶¶5-6.

13. All work on the mezzanine was completed by June 30, 1999. See Ex. F, Affidavit of James Donohue at ¶6. It was thus completed prior to the plaintiffs' purchase of the Premises in September 2000. See Ex. H, Warranty Deed.

14. Pursuant to paragraph 13 of the Lease, NGS had the right to terminate the Lease at the end of thirty-eight (38) months provided it complied with certain conditions for early termination of the lease. See Ex. A, Lease at ¶13.

15. On or about September 25, 2001, NGS gave the plaintiffs written notice of its intent to terminate the Lease effective July 31, 2002. See Ex. B, Complaint at ¶22; Ex. C, Answer at ¶22. A copy of NGS's Notice of Termination is attached hereto as Exhibit J.

16. Pursuant to paragraph 13 of the Lease, NGS made, and the plaintiffs accepted, the requisite early termination payment to the plaintiffs by remitting a check in the amount of thirty-four thousand four hundred dollars ($34,400.00), an amount that represented the unamortized landlord allowance toward tenant improvements. See Ex. A, Lease at ¶13. Attached hereto as Exhibit K is a copy of a letter from Thomas Sabella to William Nadeau, dated October 10, 2001.

17. As of June 1, 1999 (i.e., the first date of the Lease), the market lease rate for the Premises in their original condition (i.e., without NGS's improvements) was $6.50 per square foot for a rentable area of 29,700 square feet. This translates to an annual

{W1281465}

-4-

CARMODY & TORRANCE LLP
Attorneys at Law
195 Church Street
Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

market rent of $193,050.00  See Appraisal by Arnold J. Grant Associates, Inc. ("Grant") at 30.  A copy of the Grant Appraisal is attached hereto as Exhibit L.

18. As of June 1, 1999 (i.e., the first date of the Lease), the market lease rate for the Premises in their improved condition (i.e., with NGS's improvements) was $7.50 per square foot for a rentable area of 28,200 square feet.  This translates to an annual market rent of $211,500.00, or $18,450.00 more than the annual market rent for the Premises in their original condition as of the same date.  See Ex. L, Grant Appraisal at 30.

19. As of June 3, 2002 (i.e., the date of Grant's inspection of the interior of the Premises), the market lease rate for the Premises if restored to their original condition (i.e., before NGS's improvements) would have been $7.00 per square foot for 29,700 square feet of rentable space.  This translates to an annual market rent of $207,900.00 for the Premises in their original condition.  See Ex. L, Grant Appraisal at 31.

20. As of June 3, 2002 (i.e., the date of Grant's inspection of the interior of the Premises), the market lease rate for the Premises in their improved condition (i.e., with NGS's improvements) would have been $8.00 per square foot for 28,200 square feet of rentable space.  This translates to an annual market rent of $225,600.00, or $17,700.00 more than the market rent for the Premises in their original condition as of the same date.  See Ex. L, Grant Appraisal at 31.

21. The plaintiffs do not wish to restore the Premises to their original condition; instead, they seek to restore only "portions" of the Premises to their original condition in order to retain the benefit of NGS's improvements to the property.  At the same time, the plaintiffs seek to recover the full cost of restoring the Premises to their

{W1281465}

CARMODY & TORRANCE LLP  
Attorneys at Law  
195 Church Street  
Post Office Box 1950  
New Haven, CT 06509-1950  
Telephone: 203 777-5501

original condition. See Affidavit of Thomas Sabella, ¶¶13-20; Deposition of Thomas Sabella at 32. Mr. Sabella's affidavit is attached hereto as Exhibit M, and portions of his deposition are attached hereto as Exhibit N.

22. The plaintiffs never sought to have the Premises appraised and they did not ask their broker, Mr. Morris, to perform an appraisal of the Premises. See Ex. N, Deposition of Thomas Sabella at 47-48.

23. The plaintiffs have yet to undertake virtually any of the restoration work that they claim NGS and NU are required to fund. As of Thomas Sabella's deposition on June 27, 2003, among other things, the plaintiffs had not restored the three separate electric meters, had not demolished the interior walls that NGS erected, had not removed the large, concrete wheelchair ramp, and had not restored the Premises' original telecommunications equipment. See Ex. N, Deposition of Thomas Sabella at 105-06. See also Deposition of Jay L. Morris at 194. Excerpts from the deposition testimony of the plaintiffs' broker Jay Morris are attached hereto as Exhibit O.

24. There is no admissible evidence in the record before the Court that the improvements NGS made to the Premises caused plaintiffs any loss of rental income. The testimony of plaintiffs' broker, Mr. Morris, an individual who is neither qualified nor competent to give an opinion as to why the Premises may be difficult to rent or to give any estimates of value, must be disregarded by this Court. Mr. Morris holds no licenses or certifications other than his broker's license. Mr. Morris is not a certified appraiser and has no appraisal training beyond the courses he took while enrolled in the University of Connecticut's real estate certification program, and he has never been qualified as an

{W1281465}

CARMODY & TORRANCE LLP
Attorneys at Law

195 Church Street
Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

expert witness to give an opinion as to value in any court. <u>See</u> Ex. O, Deposition of Jay Morris at 10, 121.

25. When the plaintiffs purchased the Premises in September 2000, the market for real estate of quality and location equal to that of the Premises was, according to Mr. Sabella, "normally healthy." <u>See</u> Ex. N, Deposition of Thomas Sabella at 60.

26. When NGS sent the plaintiffs the Termination Notice in September 2001, the real estate market, including the market for properties such as the Premises, had become "difficult" due to the "general economic downturn in the country" and "soft" economy. <u>See</u> Ex. N, Deposition of Thomas Sabella at 61-64.

27. The plaintiffs have introduced no admissible evidence to refute defendants' expert testimony as to the value of the Premises (the Grant Appraisal), which demonstrates the improvements redound to the benefit of the plaintiffs in that the market lease rate for the Premises and the annual market rent for the Premises in their improved condition are greater than they would be if the Premises were restored to their original condition. <u>See</u> Ex. L, Grant Appraisal at 30-31.

28. Paragraph 38 of the Lease states that the Lease "shall be construed under the laws of the State of Connecticut." <u>See</u> Ex. A, Lease at ¶38.

CARMODY & TORRANCE LLP   195 Church Street
Attorneys at Law          Post Office Box 1950
                          New Haven, CT 06509-1950
                          Telephone: 203 777-5501

THE DEFENDANTS,
NORTHEAST GENERATION SERVICES
COMPANY
and NORTHEAST UTILITIES

BY: */s/ Ann H. Rubin*
ANN H. RUBIN (ct04486)
Carmody & Torrance LLP
195 Church Street; 18th Floor
P.O. Box 1950
New Haven, CT 06509-1950
Phone: 203-777-5501
Facsimile: 203-784-3199
Email: arubin@carmodylaw.com

Their Attorneys

{W1281465}

-8-

CARMODY & TORRANCE LLP     195 Church Street
Attorneys at Law           Post Office Box 1950
                           New Haven, CT 06509-1950
                           Telephone: 203 777-5501

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on the above date, to:


Philip M. Halpern, Esq.
Harry J. Nicolay, Jr., Esq.
Collier, Halpern, Newberg, Nolletti & Bock, LLP
One North Lexington Avenue
White Plains, NY  10601
Phone: 914-684-6800
Facsimile: 914-684-6986
Email: phalpern@chnnb.com
Email: hnicolay@chnnb.com


Duncan Ross MacKay, Esq.
Northeast Utilities Service Company
P.O. Box 270
Hartford, CT  06141-0270
Phone: 860-665-3495
Facsimile: 860-665-5504
Email: mackadr@nu.com

*Courtesy Copy:*

Chambers,
The Hon. Holly B. Fitzsimmons
U.S. Magistrate Judge
United States District Court
District of Connecticut
915 Lafayette Boulevard
Bridgeport, CT  06604

*[signature]*
Ann H. Rubin

{W1281465}

-9-

CARMODY & TORRANCE LLP
Attorneys at Law

195 Church Street
Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501