UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS SABELLA and KAREN SABELLA, | : | CIVIL ACTION NO. |
| | : | 3:02 CV2008 (SRU) |
| Plaintiffs, | : | |
| | : | |
| VS. | : | |
| | : | |
| NORTHEAST GENERATION SERVICES | : | |
| COMPANY and NORTHEAST UTILITIES, | : | DECEMBER 29, 2003 |
| | : | |
| Defendants. | : | |

LOCAL RULE 56(a)(2) STATEMENT OF NORTHEAST GENERATION
SERVICES COMPANY AND NORTHEAST UTILITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

A.  RESPONSE TO STATEMENT OF ALLEGEDLY UNDISPUTED
FACTS IN PLAINTIFFS' LOCAL RULE 56(a)(1) STATEMENT

1.  Plaintiffs are the owners of a 29,700 square foot commercial building located at 273 Dividend Road, Rocky Hill, Connecticut (hereinafter referred to as "the Premises").

**Response:** The defendants admit that the plaintiffs currently own the commercial building located at 273 Dividend Road, Rocky Hill, Connecticut.

2.  The defendant, Northeast Generation Services Company, a corporation organized and existing under the laws of the State of Connecticut, (hereinafter referred to as "NGS"), was a tenant in the Premises pursuant to a written lease with the plaintiffs' predecessors in title, Har-Flan, dated May 13, 1999 (hereinafter referred to as "the Lease").

**Response:** Admitted.

{W1281526}

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law          Post Office Box 1950
                          New Haven, CT 06509-1950
                          Telephone: 203 777-5501

3. Pursuant to the terms of the Lease, NGS rented the Premises for a term of sixty-two (62) months commencing on June 1, 1999 and ending on July 31, 2004.

**Response:** Admitted.

4. On or about June 11, 1999, the defendant, Northeast Utilities, a business trust formed and existing under the laws of the Commonwealth of Massachusetts, executed a performance guaranty of NGS's obligations under the Lease.

**Response:** Admitted.

5. Pursuant to the terms of the Performance Guaranty, Northeast Utilities irrevocably and unconditionally guaranteed to Har-Flan, its successors and assigns, *inter* alia, full and prompt performance of NGS's obligations under the Lease.

**Response:** It is admitted that on or about June 11, 1999, Northeast Utilities executed a performance guaranty that was accepted by Har-Flan Associates. A copy of the performance guaranty is attached hereto as Exhibit A, and the terms of that guaranty are set forth therein.

6. On September 29, 2000, Har-Flan assigned the Lease and the Performance Guaranty to the Sabellas.

**Response:** Admitted.

7. On or about June 1, 1999, NGS entered into possession of the Premises and initially rented 24,500 square feet of the Premises.

**Response:** Admitted.

{W1281526}    2

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law    Post Office Box 1950
                    New Haven, CT 06509-1950
                    Telephone: 203 777-5501

8. Paragraph 12 of the Lease permitted NGS to make alternations to the Premises, provided, as a condition, the Premises, if requested by the landlord, were to be restored to the original condition at the end of the lease term. That paragraph provides, in relevant part that "[a]t the end of the lease term the Tenant agrees to restore the Premises to original condition, if requested by Landlord."

**Response:** It is admitted that the plaintiffs have accurately set forth a portion of paragraph 12 of the Lease. A copy of the Lease is attached hereto as Exhibit B and paragraph 12 is set forth in its entirety therein.

9. Prior to NGS's occupancy of the Premises, the Premises consisted of approximately 29,700 square feet, including 10,700 square feet of office area and a second floor mezzanine office of approximately 1,700 square feet. In addition, there were three electric utility meters at the Premises, and the only air conditioned space in the Premises was the 10,700 square feet of office area, not the warehouse space.

**Response:** Paragraph 9 is admitted, except that the footnote to paragraph 9 should be stricken as irrelevant and improper.

10. Upon entering into possession of the Premises, NGS made alterations thereto.

**Response:** Admitted.

11. In his deposition, Mr. Morris testified that some of NGS's alterations to the Premises included the following: removal of the mezzanine level which reduced the building square footage by approximately 1,700 square feet; construction of large rooms for NGS's specific equipment; renovations to the front and rear office space; removal of bathrooms; conversion of the power supply from three meters to one meter; the addition of air conditioning units to rooms in the warehouse; and the construction of a big concrete ramp.

**Response:** Defendants admit that Mr. Morris so testified at his deposition. However, defendants disagree with the description and characterization of NGS's improvements to the Premises contained in Paragraph 11. As William Nadeau of NGS explained in his deposition, NGS's improvements to the Premises were designed

{W1281526}   3

CARMODY & TORRANCE LLP
Attorneys at Law

195 Church Street
Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

to create a code-compliant set of offices and warehouse space that contained upgraded electrical, telecommunications, and air conditioning systems, and a new handicapped accessible bathroom. <u>See</u> Deposition of William Nadeau, Vice President and Chief Operating Officer of NGS, at 53  Excerpts from Mr. Nadeau's deposition are attached hereto as Exhibit C.  NGS also installed a ramp in order to give disabled employees access to the Premises. <u>Id.</u> at 87.

12. William J. Nadeau, a Vice President at NGS, (hereinafter referred to as "Mr. Nadeau"), also confirmed in his deposition that some of NGS's alterations to the Premises included the following: removal of the mezzanine level; construction of partition areas in the warehouse space of the Premises; construction of interior walls; construction of a lunchroom; removal of restroom facilities; installation of air conditioning units placed in exterior walls; the consolidation of electric meters; changes to the telecommunications systems; and the installation of a ramp in the middle of the Premises.

**Response:** It is admitted that Mr. Nadeau testified that NGS's alterations to the Premises included the items set forth in Paragraph 12.  However, the defendants refer the Court to Mr. Nadeau's deposition, which explains that NGS's changes to the Premises were designed to make the facility compliant with relevant municipal codes and other legal requirements regarding handicapped accessibility. <u>See</u> Ex. C, Deposition of William Nadeau at 53, 87.  NGS's changes to the Premises' electrical, telecommunications, and air conditioning systems were upgrades to those systems. <u>Id.</u> at 53.  In addition, the ramp that NGS installed was legally required to in order to give disabled employees access to the facility, and NGS's changes to the Premises' bathroom facilities included installing handicapped accessible restroom facilities, which the Premises had previously lacked. <u>Id.</u>  Finally, the defendants deny the plaintiffs' characterization of NGS's alterations to the mezzanine level of the

{W1281526}                                                         4

CARMODY & TORRANCE LLP        195 Church Street
Attorneys at Law              Post Office Box 1950
                              New Haven, CT 06509-1950
                              Telephone: 203 777-5501

Premises. NGS removed <u>stairway access</u> to the mezzanine level in order to bring the mezzanine into compliance with applicable building codes and other legal requirements. NGS did not remove the mezzanine from the Premises, and, after NGS rebuilt the mezzanine floor space and supporting structure, it contained approximately the same number of square feet of floor space. See Affidavit of James Donohue at ¶¶5-6. A copy of Mr. Donohue's affidavit is attached hereto as Exhibit D.

      13. NGS had a right of first refusal under the Lease, to rent approximately 5,207 square feet of additional space that was adjacent to the Premises.

    **Response:** Admitted.

      14. On or about October 19, 1999, pursuant to its right of first refusal set forth in the Lease, NGS exercised its right to lease the remaining 5,207 square feet of the Premises.

    **Response:** Admitted.

      15. NGS had the right to terminate the Lease at the end of thirty-eight (38) months provided it complied with certain conditions for early termination of the lease.

    **Response:** Admitted.

      16. On or about September 25, 2001, NGS gave the plaintiffs written notice of its intent to terminate the Lease effective July 31, 2002.

    **Response:** Admitted.

{W1281526}   5

CARMODY & TORRANCE LLP   195 Church Street
Attorneys at Law   Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

17. Prior to the termination of the lease term and pursuant to paragraph 12 of the Lease, Thomas Sabella requested on several occasions that NGS restore portions of the Premises to the original condition in which it existed prior to NGS's alterations made thereto.

**Response:** It is admitted that Thomas Sabella requested that the defendants restore <u>portions</u> of the Premises to the original condition in which they existed prior to NGS's alterations made thereto, but the plaintiffs have sought to retain the benefit of many of the improvements made by the defendants. As Mr. Sabella explained in his deposition: "There are many changes they've made to the building that I have not asked them to restore." <u>See</u> Deposition of Thomas Sabella at 31-32. Excerpts of Mr. Sabella's deposition are attached hereto as Exhibit E.

18. The defendants have refused to restore portions of the Premises to their original condition as required by paragraph twelve (12) of the Lease. In response to one of Plaintiffs' First Set of Interrogatories, the Defendants represented as follows:

<u>**Interrogatory #5**</u>: "Please describe any and all efforts made by or on behalf of either [NGS or NU] to restore the Premises to original condition at the end of the lease term and identify upon whose behalf said efforts were made."

<u>**Defendants' Response**</u>: "No efforts were made to restore the premises."

**Response:** It is admitted that Paragraph 18 accurately reprints the defendants' response to interrogatory #5 in the Plaintiffs' First Set of Interrogatories. The defendants deny, however, the plaintiffs' characterization of that response as a refusal to restore the Premises.

{W1281526}                              6

19. Pursuant to its Notice of Termination, the lease term ended on July 31, 2002, and NGS vacated the Premises, including the additional 5,207 square feet it took possession of pursuant to its right of first refusal under the Lease.

**Response:** Admitted.

20. NU has failed and otherwise refused to perform the obligations of its indirect subsidiary, NGS under the Lease by not restoring portions of the Premises to the original condition as required under paragraph (12) of the Lease.

**Response:** NU admits that it has not restored the Premises to their original condition. NU denies that NGS is its indirect subsidiary. NU denies the plaintiffs' characterization of not restoring the Premises to their original condition as a failure and refusal to perform the obligations of its indirect subsidiary. Furthermore, Plaintiff Thomas Sabella testified at his deposition that "there are many changes they've made to the building that I have not asked them to remove." See Ex. E, Deposition of Thomas Sabella at 32.

21. Accordingly, it is clear that NGS and NU have breached their respective obligations under the Lease and Performance Guaranty by failing and refusing to do any of the following as required under paragraph (12) of the Lease: (i) restore approximately 1,700 square feet of finished office space on the mezzanine level which was removed by NGS; (ii) restore three separate working electric meters; (iii) demolish interior walls and other conditions constructed by NGS in order to restore the Premises to open and finished warehouse space (including the removal of office cubicles in the middle of the warehouse); (iv) restore walls and doors which divided the Premises into three separate units; (v) restore male and female restroom facilities; (vi) remove a large concrete ramp in the middle of the Premises; (vii) remove air conditioning units in the exterior walls and restore those walls; and (viii) restore original telecommunications equipment as well as other building systems and meters for multi-tenant occupancy of the Premises.

**Response:** The defendants deny paragraph 21 in its entirety as improper in a Local Rule 56(a)(1) statement of claimed undisputed facts because it states a legal conclusion.

{W1281526}                              7

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law          Post Office Box 1950
                          New Haven, CT 06509-1950
                          Telephone: 203 777-5501

22. As a result of NGS's breach of the Lease and NU's breach of the Performance Guaranty, the Plaintiffs have incurred damages as they relate to: (1) the cost of restoration of portions of the Premises to their original condition prior to NGS's occupancy; (2) lost rent due to the inability to re-rent the Premises to new tenants; and (3) attorneys' and expert witness fees.

**Response:** The defendants deny the plaintiffs' statement that the defendants have breached the Lease, and reiterate that such legal conclusions are improper in a Local Rule 56(a)(1) statement. The defendants further deny that the plaintiffs have incurred any damage and refer the Court to the undisputed expert testimony that their expert witness, appraiser Arnold J. Grant Associates, Inc. ("Grant") has provided. Grant's appraisal shows that the market lease rates for the Premises and the annual market rent for the Premises are higher as a result of the defendants' improvements than they would be if the Premises were restored to their original condition. Grant's Appraisal is attached hereto as Exhibit F.

23. In his deposition, Mr. Morris testified regarding the difficulty of re-renting the Premises to new tenants. According to Mr. Morris, most of the alterations to the Premises made by NGS were a detriment to reletting the Premises because most tenants would not be able to use them. For example, Mr. Morris testified in his deposition that the majority of prospective commercial tenants that he was dealing with were seeking a combination of approximately twenty (20) percent of office space and eighty (80) percent of warehouse space. Moreover, Mr. Morris also testified that since the Premises consisted of fifty (5) percent of office space and fifty (50) percent of warehouse space following NGS's alterations, the percentage of prospective tenants that could actually use this combination of space decreased.

**Response:** The defendants admit that Mr. Morris so testified at his deposition. Defendants deny the substance of Mr. Morris' testimony because Mr. Morris is neither qualified nor competent to give an opinion as to why the Premises may be difficult to rent or to give any estimates of value. Mr. Morris holds no licenses or certifications

{W1281526}   8

other than his broker's license. See Deposition of Jay L. Morris at 10. Mr. Morris is not a certified appraiser and has no appraisal training beyond the courses he took while enrolled in the University of Connecticut's real estate certification program, and has never been qualified as an expert witness to give an opinion as to value in any court. Id. at 121. In addition, plaintiffs have not disclosed Mr. Morris as an expert witness to testify as to the value of the Premises. For all of these reasons, any testimony offered by Mr. Morris regarding the value of the Premises or the reasons why it may be difficult to rent them should be dismissed as improper. Excerpts of the portions of Mr. Morris' deposition cited herein are attached hereto as Exhibit G. In addition, Mr. Sabella admits that he never obtained an appraisal of the Premises from a qualified appraiser and that Mr. Morris never performed an appraisal of the Premises. See Ex. E, Deposition of Thomas Sabella at 47.

24. The Lease provides for the recovery of liquidated damages by the landlord upon termination of the Lease as follows:

> "[u]pon termination of this Lease, Landlord at its option shall be entitled to recover as damages notwithstanding any other provisions of this Lease or applicable law to the contrary, (in lieu of all other claims for damages on account of the termination of this Lease) as and for liquidated damages an amount equal to the total of:
>
> > (1) all rent and other sums due and payable by Tenant on the date of termination, plus
> >
> > (2) an amount equal to the value of the Rent and other sums provided herein to be paid by Tenant for the residue of the stated term hereof, less the fair rental value of the Premises for the remainder of the stated term (taking into account the time and expenses necessary to obtain the replacement lessee or lessees, including expenses relating to recovery of the Premises, preparation for reletting and for reletting itself including, without limitation, brokerage and management commissions, architect Is [sic] and other fees, repairs alterations, operating expenses, reasonable attorney fees and alteration costs, the foregoing being referred to as "reletting costs"); and

{W1281526}                              9

CARMODY & TORRANCE LLP        195 Church Street
Attorneys at Law              Post Office Box 1950
                              New Haven, CT 06509-1950
                              Telephone: 203 777-5501

> (3) the cost of performing any other covenants to be performed by Tenant; or such damages as Landlord has incurred or will incur as a result of Tenant's default, including, without limitation, the accelerated balance of Base Rent remaining due under this Lease as well as Additional Rent."

**Response:** The defendants admit that paragraph 24 accurately sets forth the language contained in paragraph 25(b) of the Lease. The defendants deny that the plaintiffs are entitled to recover liquidated damages.

25. With respect to attorneys' and expert witness fees, paragraph forty-five (45) of the Lease provides in pertinent part that,

> "[i]n the event it is necessary by either party to take action to enforce the terms of this Lease, the prevailing party shall be entitled to recover any and all costs of collection due under the Lease and of the enforcement of this Lease including, without limitation, reasonable attorneys' fees, broker fees, accountant fees, expert witness fees, and costs of reletting the Premises whether or not litigation is commenced. "

**Response:** The defendants admit that paragraph 25 accurately sets forth the language contained in paragraph 45 of the Lease. The defendants deny that the plaintiffs are entitled to recover attorneys' fees, expert witness fees, or any other costs pursuant to this provision of the Lease.

26. Paragraph thirty-eight (38) of the Lease provides in pertinent part that the Lease "shall be construed under the laws of the State of Connecticut…"

**Response:** Admitted.

CARMODY & TORRANCE LLP   195 Church Street
Attorneys at Law   Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

**B.  MATERIAL FACTS AS TO WHICH DEFENDANTS CONTEND THERE ARE GENUINE ISSUES TO BE TRIED**

As explained in detail in the defendants' Memorandum of Law in opposition to plaintiffs' motion for partial summary judgment and in support of defendants' cross motion for summary judgment, the defendants submit that there are no material facts as to which there are genuine issues to be tried. The only disputed issues before the Court are legal questions, such as the proper measure of damages and whether the plaintiffs have been damaged as a matter of law.

THE DEFENDANTS,
NORTHEAST GENERATION SERVICES COMPANY
and NORTHEAST UTILITIES

BY: _____
ANN H. RUBIN (ct04486)
Carmody & Torrance LLP
195 Church Street; 18th Floor
P.O. Box 1950
New Haven, CT 06509-1950
Phone: 203-777-5501
Facsimile: 203-784-3199
Email: arubin@carmodylaw.com

Their Attorneys

{W1281526}   11

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law          Post Office Box 1950
                          New Haven, CT 06509-1950
                          Telephone: 203 777-5501

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on the above date, to:

Philip M. Halpern, Esq.
Harry J. Nicolay, Jr., Esq.
Collier, Halpern, Newberg, Nolletti & Bock, LLP
One North Lexington Avenue
White Plains, NY 10601
Phone: 914-684-6800
Facsimile: 914-684-6986
Email: phalpern@chnnb.com
Email: hnicolay@chnnb.com

Duncan Ross MacKay, Esq.
Northeast Utilities Service Company
P.O. Box 270
Hartford, CT 06141-0270
Phone: 860-665-3495
Facsimile: 860-665-5504
Email: mackadr@nu.com

*Courtesy Copy:*

Chambers,
The Hon. Holly B. Fitzsimmons
U.S. Magistrate Judge
United States District Court
District of Connecticut
915 Lafayette Boulevard
Bridgeport, CT 06604

_____
Ann H. Rubin

{W1281526}    12

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law    Post Office Box 1950
    New Haven, CT 06509-1950
    Telephone: 203 777-5501