UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

THOMAS SABELLA and KAREN SABELLA,

                Plaintiffs,

               -against-

NORTHEAST GENERATION SERVICES
COMPANY and NORTHEAST UTILITIES,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Civil Action Docket
No. 3:02 CV 2008 (SRU)


**PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGEMENT**

## TABLE OF CONTENTS

Page No.

PRELIMINARY STATEMENT ................................. 1

I.    Plaintiff's Reply To Defendants' Opposition
      To Plaintiffs' Motion For Partial Summary
      Judgement ..................................... 5

A.    Under Connecticut law and the Lease, The Proper
      Measure of Damages In This Case Is The Cost to
      Restore The Premises To The Original Condition
      As Requested By The Landlord ................... 5

      i)    Economic Waste Must Be Pled by the
            Defendants as an Affirmative Defense ....... 5

      ii)   There is no economic waste ................ 6

      iii)  The premises have diminished in value ...... 9

      iv)   The Exception to the Diminution in value
            rule is also applicable ................... 11

      v)    The liquidated damage clause stipulated
            that the costs to restore is the proper
            measure of damages ........................ 13

      vi)   Spera is distinguishable .................. 14

      vii)  The diminished value rule is the minority
            rule of law ............................... 16

B.    The Defendants are not entitled to the benefit
      of any purported improvements .................. 17

-i-

II.    Plaintiffs, Not Defendants, Are Entitled
       To Summary Judgement ........................... 20

A.     The Defendants' Have Failed To Rebut The
       Plaintiffs' Assertion That The Plaintiffs'
       Have Been Damaged ............................. 20

       i)    The plaintiffs have established the
             existence of damages sufficient
             to defeat the defendants motion ........... 21

       ii)   The defendants' appraisal should
             be rejected ............................... 22

B.     The Testimony Of Jay L. Morris, A Licensed Real
       Estate Broker in Connecticut, Is Admissible
       And Demonstrates That The Defendants' Failure
       To Restore The Premises Caused Plaintiffs'
       To Lose Rental Income ......................... 25

C.     Hearing on Damages ............................ 27

CONCLUSION............................................. 28

## TABLE OF AUTHORITIES

**Federal Cases**

**Page**

*Brink v. Union Carbide Corp.*, 2000 U.S. App. LEXIS 7150
(2d Cir. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736
(2d Cir. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . 25

**State Cases**

*Barnicoat v. Edwards*, 1 Conn. App. 652, 474 A.2d 808
(Conn. App. Ct. 1984) . . . . . . . . . . . . . . . . . . . . . . 8

*Carr v. Burns*, 1990 Conn. Super. LEXIS 1261
(Conn. Super. Ct. Tolland Dist. 1990) . . . . . . . . . . . . 25

*Crowther v. Guidone*, 183 Conn. 464, 441 A.2d 11 (Conn. 1981)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Four D's, Inc. v. Mattera*, 25 Conn. App. 308, 594 A.2d 484
(Conn. App. Ct. 1991) . . . . . . . . . . . . . . . . . . . . . 10

*Garcia v. Amaranto*, 2003 Conn. Super. LEXIS 87
(Conn. Super. Ct. Fairfield Dist. 2003) . . . . . . . . . . . 23

*Johnson v. Healy*, 176 Conn. 97, 405 A.2d 54
(Conn. 1978)  . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Levesque v. D & M Builders, Inc.*, 170 Conn. 177, 365 A.2d 1216
(Conn. 1976)  . . . . . . . . . . . . . . . . . . . . . . . . 6,7

*McCahill v. Town & Country Assocs., Ltd.*, 185 Conn. 37, 440 A.2d
801 (Conn. 1981)  . . . . . . . . . . . . . . . . . . . . . . . 9

*Misisco v. La Maita*, 150 Conn. 680, 192 A.2d 891
(Conn. 1963)  . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mitchell v. Madison Enters. of Connecticut, Inc.*,
1997 Conn. Super. LEXIS 1372 (Conn. Super Ct. Tolland Dist. 1997)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

*Spera v. Audiotape Corp.*, 1 Conn. App. 629, 474 A.2d 481
(Conn. App. Ct. 1984) . . . . . . . . . . . . . . . 5,11,14,15,16

*Tessman v. Tiger Lee Constr. Co.*, 228 Conn. 42, 634 A.2d 870
(Conn. 1993)  . . . . . . . . . . . . . . . . . . . . . . 9

*Vezina v. Nautilus Pools, Inc.*, 27 Conn. App. 810, 610 A.2d 1312
(Conn. App. Ct. 1992) . . . . . . . . . . . . . . . . . . . 7

*Willow Springs Condo. Ass'n., Inc. v. Seventh BRT Dev. Corp.*,
245 Conn. 1, 717 A.2d 77 (1998) . . . . . . . . . . . . . 11,12

**Statutes**

Fed. R. Civ. P. 26(a)(2)  . . . . . . . . . . . . . . . . 23

Fed. R. Civ. P. 702 . . . . . . . . . . . . . . . . . . . 25

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------X
THOMAS SABELLA and KAREN SABELLA,

               Plaintiffs,

Civil Action Docket
No. 3:02 CV 2008 (SRU)

             -against-


NORTHEAST GENERATION SERVICES
COMPANY and NORTHEAST UTILITIES,

             Defendants.
------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGEMENT**

**PRELIMINARY STATEMENT**

As the defendants' correctly concede, the only disputed issue

in this case is a legal question regarding the appropriate measure

of damages. *See* Defendants' Memorandum of Law at p. 1. The

defendants' admit many of the indisputable facts in this case[1].

First, the defendants admit that the Lease between the plaintiffs

and Northeast Generation Services Company ("hereinafter referred to

--------------------------

[1]    For purposes of brevity, plaintiffs incorporate by
reference herein the papers submitted on plaintiffs' motion for
partial summary judgment, and will make specific references to the
papers where appropriate.

as NGS") contained a covenant to restore the premises to their original condition. *See* Defendants' Memorandum of Law at p. 8. Second, the defendants' admit that Northeast Utilities (hereinafter referred to as "NU") executed a performance guaranty of NGS's obligations under the Lease. *See* Defendants Local Rule 56(a) 2 Statement at ¶4. Third, the defendants' admit that NGS made alterations to the premises. *See* Defendants Local Rule 56(a) 2 Statement at ¶10. Fourth, the defendants admit that Thomas Sabella, the Landlord, requested that the defendants restore portions of the premises to the original condition. *See* Defendants Local Rule 56(a) 2 Statement at ¶17. Fifth, the defendants admit that the defendants did not restore the premises to their original condition.[2] *See* Defendants' Memorandum of Law at p. 8; and Defendants Local Rule 56(a) 2 Statement at ¶¶ 18,20. Sixth, the defendants admit that the Lease contains attorney fee and liquidated damage clauses. See Defendants' Local Rule 56(a)2 Statement at ¶¶24 and 25. Finally, the defendants' admit that the lease is governed by Connecticut law. *See* Defendants Local Rule 56(a) 2 Statement at ¶26. Although the plaintiffs disagree with

---

[2]    It should be noted that the defendants' deny the plaintiffs' characterization of not restoring the Premises to their original condition as a failure and/or refusal to perform by the defendants. *See* Defendants' Local Rule 56(a)2 Statement at ¶¶ 18, 20.    However, the defendants' position is inconsistent with Defendants' Memorandum of Law which refers to NGS's "failure to restore the premises". *See* Defendants' Memorandum of Law, at pp. 1, 25.

NGS's characterizations of its alterations to the mezzanine, and its description of the concrete ramp in the middle of the premises, it has addressed these issues separately in the Affidavit of Thomas Sabella. *See* Affidavit of Thomas Sabella dated January 26, 2004 at ¶¶ 9-16.

The predominant legal issue in this case is the appropriate measure of plaintiffs' damages. In their Memorandum of Law, the defendants' assert that the proper measure of damages in this case is the diminution in value of the premises. However, a proper reading of Connecticut case law reveals that the proper measure of damages in this case, is the cost to restore the premises to the original condition as requested by the Landlord. In addition, and as discussed more fully herein, the cost of restoration of the premises to the original condition is also the proper measure of damages as set forth in the liquidated damages provision of the lease between the parties. *See* paragraph 25B(3) of the Lease, annexed to Plaintiffs' Local Rule 56(a)1 Statement at Exhibit D. The defendants' have also failed to plead and prove as an affirmative defense, that the cost of restoration in this case does not amount to economic waste. Moreover, the defendants' appraisal (hereinafter referred to as the "Grant Appraisal") is inadmissible hearsay evidence and also fails to rebut the plaintiffs' allegations that they have been damaged. Finally, the defendants' incorrectly assert in their Memorandum of Law that Mr. Morris, who

3

is a licensed real estate broker in Connecticut, with approximately
20 years of experience in commercial real estate transactions, is
not qualified to testify regarding the value of the premises and
why it has been difficult for the plaintiffs' to rent the premises.
For all of the foregoing reasons, the plaintiffs' motion for
partial summary judgment should be granted, and the defendants'
cross-motion for summary judgment should be denied.

I.

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

A.   Under Connecticut law and the Lease, The Proper Measure
     of Damages In This Case Is The Cost to Restore The
     Premises To The Original Condition As Requested By The
     Landlord

The Defendants' claim that the diminution in value of the premises is the proper theory of damages is incorrect. Moreover, the plaintiffs have failed to plead and prove that the cost to restore the premises to the original condition amounts to economic waste. The Defendants cite to *Spera v. Audiotape Corp.*, 1 Conn. App. 629, 474 A.2d 481 Conn. App. Ct.(1984), for the legal proposition that limits damages involving real property to the diminished value of the property wherever the cost of restoration is dramatically larger than is the difference in value. The purpose of the diminution in value rule is to avoid unreasonable economic waste. Id. *See* Defendants' Memorandum of Law, at p. 9. In other words, damages may be measured by the costs to restore, provided there is no economic waste.

i) Economic Waste Must Be Pled by the
   Defendants as an Affirmative Defense

Significantly, the burden of demonstrating economic waste clearly rests with the defendants. *Mitchell v. Madison Enterprises of Connecticut, Inc.*, 1997 Conn. Super. LEXIS 1372, 38-39 (Conn.

5

Super Ct. Tolland Dist. 1997).  In this regard, the Court in *Mitchell*, stated as follows:

> [t]he burden of proving economic waste is on the party that breached the contract and that invokes the doctrine in an effort to limit expectation interest damages. [citation omitted].  'The burden is on the defendant to <u>affirmatively</u> and convincingly prove that economic waste would result from the replacement of the omissions and defects [because] it is the defendant who is seeking to prove a situation whereby he will get equitable relief from a rule of law' [citation omitted].  Id. at 38-39 (Conn. Super District of Tolland 1997. [Emphasis added].

The defendants' Answer does not assert as an affirmative defense, that the cost to restore the premises to the original condition amounts to economic waste.  In the absence of such a defense in their answer, the defendants should be precluded from raising this issue now.

### ii) There is no economic waste

The defendants have failed to provide any evidence at all that the cost of restoring the premises to the original condition as requested by the plaintiffs constitutes economic waste, or that the expenditure of such costs would result in a windfall to the plaintiffs.  The facts of the present case are distinguishable from cases in which the courts have not awarded restoration costs based on economic waste.  For instance, in *Levesque v. D & M Builders, Inc.*, a buyer wanted to relocate a house misplaced on a building lot.  170 Conn. 177, 365 A.2d 1216 (Conn. 1976).  However, the Supreme Court of Connecticut refused to permit relocation costs of

6

$10,800 to be awarded for breach of contract and warranty when the original contract price had been $22,600. *Id.* at 182. *Levesque* adopts a rule that limits damages to the diminished value of the building whenever the cost of repair is <u>dramatically larger</u> than is the difference in value. *Levesque v. D & M Builders*, 170 Conn. at 180-82. The Court's decision in *Levesque* not to award relocation costs was logical in view of the fact that the relocation costs <u>were nearly 50%</u> of the purchase price. For the Court to have awarded such damages in *Levesque* would clearly have involved unreasonable economic waste.

Similarly, the Court in *Johnson v. Healy*, 176 Conn. 97, 405 A.2d 54 (Conn. 1978), refused to award $27,150 in restoration costs for constructing a new foundation for a house that was originally purchased for $17,000. In doing so, the *Johnson* court noted that the price discrepancy between reconstruction cost and purchase price was <u>even larger</u> than it was in *Levesque*. *Id.* at 105-6. In addition, in *Vezina v. Nautilus Pools, Inc.*, 27 Conn. App. 810, 610 A.2d 1312 (Conn. App. Ct. 1992), the Court did not award repair costs of $5,694.78 for an above ground pool when the plaintiffs purchased the pool at a cost of over $7000.00. The *Vezina* Court noted that since the cost of repairs was <u>nearly the same as the purchase price</u> of the pool, the award of such damages clearly involved an unreasonable economic waste. *Id.* at 823. The Court further concluded that because the cost of rectifying the

7

defendant's omission was so great in comparison to the cost of the purchase of the pool itself, the proper measure of damages was the diminished value of the plaintiffs' pool. *Id.*

The Courts are however, willing to award restoration costs to a plaintiff when such costs are not greatly disproportionate to the purchase price. For example, in a suit for breach of contract for the construction of a new house, the Court in *Barnicoat v. Edwards*, found that the cost of repair of $6470.86 was <u>a reasonably small amount</u> when compared to the purchase price of the house and lot in the amount of $52,260 (<u>i.e.</u>, only 12.4% of the purchase price). 1 Conn. App. 652, 655, 474 A.2d 808, 810 (Conn. App. Ct. 1984). Accordingly, the award of those damages did not involve an unreasonable economic waste. *Id.*

Unlike the *Levesque, Johnson,* and *Vezina* cases, the present case does not involve unreasonable economic waste because the cost to restore the premises to the original condition as requested by the plaintiffs is not greatly disproportionate, nor does it exceed the purchase price of the premises. Specifically, plaintiffs purchased the premises on or about September 29, 2000, for a cost of $1,725,000.00. *See* Affidavit of Thomas Sabella dated January 26, 2004 at ¶17. The cost to restore the premises to the original condition prior to NGS's occupancy and alterations is $283,730.00. *See* Exhibit A annexed to the Affidavit of Gary R. Dayharsh. Here, the restoration costs in this case are only approximately 16.0%

8

percent of the purchase price, a reasonably small amount when compared to the $1,725,000.00 purchase price of the premises. Awarding the plaintiffs' restoration costs in the amount of $283,730.00, would not involve unreasonable economic waste. There will simply be no windfall to the plaintiffs if the defendants are merely required to pay for the restoration of the bathrooms and 1700 square foot mezzanine that were removed by the defendants, or if the concrete ramp installed by the defendants between two rentable units is required to be removed. The cost to repair the holes in the walls caused by the through-the-wall air conditioning units, the restoration of three separate electric meters, the original telecommunications equipment and the demising walls between the three separate rentable units which were removed by the defendants, will also not result in any economic windfall to the plaintiffs. Clearly, the expenditure of these restoration costs are economically prudent and reasonable.

### iii) The premises have diminished in value

It is well established under Connecticut law, that an owner of property is qualified to testify as to his personal opinion regarding the value, or diminution in value, of his properties. *Tessman v. Tiger Lee Construction Co.*, 228 Conn. 42, 47, 634 A.2d 870, 873 (Conn. 1993); *McCahill v. Town & Country Assocs., Ltd.*, 185 Conn. 37, 440 A.2d 801 (Conn. 1981); and *Misisco v. La Maita*,

9

150 Conn. 680, 685, 192 A.2d 891, 893 (Conn. 1963).    Moreover, "the valuation of real property is not an exact science. 'It is a matter of opinion based on all the evidence and, at best, is one of approximation." *Four D's, Inc. v. Mattera*, 25 Conn. App. 308, 316, 594 A.2d 484,489 (Conn. App. Ct. 1991) (*citing to Crowther v. Guidone*, 183 Conn. 464, 470, 441 A.2d 11 Conn. (1981).

The premises have suffered a significant diminution in value by reason of NGS's failure to restore the premises to the original condition as requested by the landlord.    In this case, the diminution in value of the premises is based upon NGS's failure to restore items in the premises to their original condition as requested by the landlord pursuant to paragraph 12 of the Lease. Quite simply, the difference in value is measured by the value of the premises in its restored condition, and the value of the premises in its unrestored condition immediately after NGS's departure from the premises and failure to restore on July 31, 2002.

The affidavit of Thomas Sabella dated January 26, 2004, at ¶¶ 17-31, establishes that the value of the building on the date that he purchased it, and as if it were restored to the condition requested by the landlord, was $1,725,000.00.    The value of the premises, in its unrestored condition, immediately after NGS departed from, and failed to restore, the premises on July 31, 2002 had diminished to $1,425,000.00.    The diminished value of

10

$300,000.00 is not attributable to the passage of time or market conditions, and is based solely upon the defendants' failure to restore the premises and the condition in which they returned the building to the plaintiffs.  In other words, the difference in value between the premises restored, and unrestored is $300,000.00 less.  The defendants have returned the building to the plaintiffs with a value of $300,000.00 less than it would be had they restored it, as requested by the landlord.  This diminished value of $300,000.00 is  larger than the cost to restore the premises (i.e., $283,730), and thus, under the rule established by <u>Spera</u>, <u>supra</u>, 1 Conn. App 629, the cost to restore the premises is the proper measure of damages to be awarded to the plaintiffs.  Clearly, the plaintiffs have established both the existence, and  amount, of damage to which they are entitled.

### iv)    The Exception to the Diminution in value rule is also applicable

In  <i>Willow Springs Condo Ass'n., Inc. v. Seventh BRT Development Corp.</i>, the Connecticut Supreme Court explained the proper amount of damages for injury to real property and an exception to the diminution in value rule, as follows:

> In determining the proper measure of damages for injury to land, the legal effort...is to compensate the landowner for the damage done...This is essentially true whether the injury is redressed under a theory of tort or breach of contract...The basic measure of damages for injury to real property is the resultant diminution in its value...There is, however, a well established

11

exception to this formula; such diminution in value may be determined by the cost of repairing the damage, provided, of course, that the cost does not exceed the former value of the property and provided also that the repairs do not enhance the value of the property over what it was before it was damaged. *Willow Springs Condo Assocn., Inc. v. Seventh BRT Development Corp.*, 245 Conn. 1, 59, 717 A.2d 77 Conn.(1998). (Internal quotation marks and citations omitted.). [Emphasis added].

In addition, the Court in *Willow Springs Condominium*, noted that the cost of repairs is a proxy for diminution in value caused by damage to property, and therefore, the plaintiff need not introduce evidence of both diminution in value and cost of repairs. *Id.* at 60.

In order to be entitled to the costs of restoration under the exception to the diminution in value rule of damages, the plaintiffs must establish that: (1) the restoration costs do not exceed the former value of the property, and (2) that the repairs do not enhance the value of the property over what it was before it was damaged. *Id.* at 60. The plaintiffs have established the existence of both conditions, and are entitled to the cost to restore the premises to their original condition.

With regard to the first condition, the affidavits of Thomas Sabella dated January 26, 2004, and Gary Dayharsh dated January 19, 2004, demonstrate that the cost to restore the subject premises to its original condition is $283,730.00. Mr. Sabella's affidavit also demonstrates that the former value and purchase price of the premises, as if it were restored, on September 29, 2000 was

12

$1,725,000.00. Here, the costs of restoration do not exceed the purchase price of the property being repaired. With respect to the second condition, the affidavit of Thomas Sabella, at paragraph 33, has demonstrated that the restoration of the premises to its original condition will not enhance the value of the building over what it was before it was damaged. The reason for this is simple, the restoration will merely return the premises to the same condition - and value- it was in prior to the defendants' alterations. Given the fact that the plaintiffs have established that the exception to the diminished value rule applies, it necessarily follows that the $283,730 cost to restore the premises is the appropriate remedy in this action.

> **v)   The liquidated damage clause stipulates that the costs to restore is the proper measure of damages**

The cost to restore the premises to the original condition as requested by the landlord is the proper measure of damages pursuant to the liquidated damages provision of the lease. Paragraph 25(B) of the Lease clearly states, in pertinent part, as follows:

> [u]pon termination of this Lease, Landlord at its option shall be entitled to recover as damages notwithstanding any other provisions of this Lease or applicable law to the contrary, (in lieu of all other claims for damages on account of the termination of this Lease) as and for liquidated damages an amount equal to the total of...the cost of performing any other covenants to be performed by Tenant; or such damages as Landlord has incurred and will incur as a result of Tenant's default..." (emphasis added) See Exhibit D annexed to Plaintiffs' Local Rule 56(a)1

13

Statement.

Under paragraph 12 of the Lease, the defendants had a clear obligation to restore the premises to original condition if requested by the landlord. *Id.* The defendants failed to fulfill this obligation of the lease, after being given notice to do so by the landlord. Therefore, the plaintiffs, upon the defendants' termination of the lease -- and pursuant to the liquidated damage clause -- were entitled to the $283,730 cost of performing the defendants' covenant to restore the premises to their original condition. *See* Exhibit A annexed to the Affidavit of Gary R. Dayharsh dated January 19, 2004. Simply put, despite the possible existence of "applicable law to the contrary", the defendants specifically agreed that the proper measure of damages for their failure to perform the covenant to restore the premises, would be the cost to restore the premises to their original condition which, in this case, is $283,730.

## vi) Spera is distinguishable

The defendants' reliance upon the *Spera* case is inappropriate because it is factually distinguishable from the present case. *See Spera v. Audiotape Corp.*, 1 Conn. App. 629, 474 A.2d 481 (Conn. App. Ct. 1984). For example, a comparison of the restoration clause in *Spera* and the present case, reveals that they are in fact different. The defendants' failed to point out this distinction by

14

omitting words from the relevant lease provision in *Spera*.   *See*
Defendants' Memorandum of Law at p. 10.   For example, if the
defendants' had properly quoted the lease provision in *Spera*, that
provision would read as follows:

> [t]he Lessee shall remove all of its fixtures, machinery,
> equipment, and additions made to said premises and shall
> in so doing put the premises back in the same condition
> as they are now in, ordinary wear, tear and needed
> painting excepted. Id. *Spera v. Audiotape Corp.*, 1 Conn.
> App. at 632, 474 A.2d at 483.

The requirement in *Spera* that the premises be put back in the
same condition was clearly limited with respect to the removal of
fixtures, machinery, equipment, and additions to the premises with
the inclusion of the words "and shall in so doing".   Paragraph 12
of the Lease in the present case has no such limitation and simply
states, "[a]t the end of the lease term the tenant agrees to
restore the premises to original condition, if requested by
Landlord."   *See* Exhibit D annexed to Plaintiffs' Local Rule 56(a)1
Statement.   Hence, the clause in *Spera* is different from the
restoration clause in paragraph 12 of the Lease and lacks
applicability here.

In addition, the building at issue in <u>Spera</u> was sold by the
owner for $120,000.  The costs to restore the premises were alleged
to be $60,000, or 50% of the value/sale price of the building.
When the costs to restore have approached 50% of the value of the
building, courts have determined that the possibility of economic
waste exists, and thus the measure of damages should be the

15

diminished value. This is not the case in this action, as the cost to restore are a mere 16% of the purchase price of the subject premises. Clearly, the facts and lease clause of Spera are distinguishable from the facts and relevant lease clause at issue in this action. Spera involves the risk of economic waste, whereas this action does not.

### vii) The diminished value rule is the minority rule of law

Finally, the defendants' cite to several Federal Circuit and District Courts (outside of the Second Circuit and the District Courts of Connecticut) to support their position that the diminution of value is the proper theory of damages in this case. However, as the defendants' concede, the Lease is governed by Connecticut law. *See* Defendants Local Rule 56(a) 2 Statement at 26. The cases that the defendants' cite to in other Federal jurisdictions are not binding authority and should not be given any weight by the Court. More importantly, the diminished value rule is the minority rule of law which is not recognized by the majority of the jurisdiction in the United States. See *Polster, Inc. v. Swing*, 164 Cal. App.3d 427, 432; 210 Cal. Rptr. 567, 570 (Cal. Ct. App.2d Dept. 1985).

16

**B.    The Defendants are not entitled to the benefit of any purported improvements**

The defendants' claim that plaintiffs seek to restore only portions of the premises to their original condition in order to retain the benefit of NGS's alleged improvements to the property is simply not true for several reasons.  It should first be noted however, that the defendants have failed to specifically identify the existence of any of these alleged improvements.  The defendants have not submitted any proof that any improvements were made, what these alleged improvements were, who made them, how much they cost, and when they were made.  In fact, the record is completely devoid of any competent proof that the defendants made any improvements to the subject premises at all.

Furthermore, the plaintiffs had an unequivocal right under the terms of the Lease to request that the defendants restore the premises to the original condition at the end of the lease term. Paragraph 12 of the Lease states that, "[a]t the end of the lease term the tenant agrees to restore the premises to original condition, if requested by Landlord."  *See* Exhibit D annexed to Plaintiffs' Local Rule 56(a)1 Statement.  There is nothing in this clause that forbids the landlord to request that only certain portions of the premises be restored to their original condition. The portions of the premises that the plaintiffs requested NGS restore included those items which diminished the value of the premises and made it difficult for the premises to be rented to new

17

tenants (*i.e.*, removal of restroom facilities from the premises; removal of 1,700 square feet of rentable office space on the mezzanine; installation of a concrete ramp in the middle of the premises; and installation of office cubicles and walls/partition areas in the warehouse space). *See* Affidavit of Thomas Sabella at 24 and Affidavit of Jay Morris at 24.

Under the terms of the Lease, NGS also had separate obligations to keep the premises in good order and condition, perform normal maintenance, and make certain repairs to the premises in consideration for a triple net lease. In other words, the amount of rent payable under a triple net lease is typically reduced or adjusted in order to take into consideration the obligation of the tenant to make repairs and keep the premises in good condition. *See* Exhibit D annexed to Plaintiffs' Local Rule 56(a)1 Statement at paragraphs 4D, 9, and 11. Accordingly, some of NGS's alleged improvements (which again, NGS has failed to identify), could very well have fallen under this category of maintenance and repairs that NGS was required to do under the terms of the Lease in consideration for a triple net rent.

In addition, some of NGS's alleged improvements may have been already paid for by the landlord pursuant to paragraphs 12 and 13 of the Lease. Under these provisions, the landlord gave the defendants an $86,000 allowance for certain tenant alterations. Thus, the landlord paid for some of the purported improvements made

18

by the defendants. Finally, paragraph 12 of the Lease provides in pertinent part that, "[a]ll permanent improvements shall remain property of the Landlord. *See* Exhibit D annexed to Plaintiffs' Local Rule 56(a)1 Statement. The plaintiffs therefore, had a separate right under the terms of the lease to retain any of NGS's alleged improvements. Thus, the defendants cannot now attempt to count any of their alleged improvements twice, or towards increasing the value of the premises as a set-off.

In sum, the defendants' claim that plaintiffs seek to restore only portions of the premises to their original condition in order to retain the benefit of NGS's alleged improvements is without merit.

19

II.

## PLAINTIFFS, NOT DEFENDANTS, ARE ENTITLED TO SUMMARY JUDGMENT

A.  **The Defendants' Have Failed To Rebut The Plaintiffs' Assertion That The Plaintiffs' Have Been Damaged**

Plaintiffs and Defendants are in agreement as to the legal standard necessary to obtain summary judgment. *See* Plaintiffs' Memorandum of Law at pp. 2-3; Defendants' Memorandum of Law at pp.7-8.  There is also no disagreement as to the elements for breach of contract. *See* Plaintiffs' Memorandum of Law at pp. 3-4; Defendants' Memorandum of Law at pp. 8-9. The facts, when applied to the law, reveal that it is the plaintiffs, and not the defendants, who are entitled to summary judgment. Significantly, the defendants' have failed to submit sufficient proof to support their position that the plaintiffs' have not ben damaged.  For example, the defendants' appraisal of the premises (hereinafter referred to as the "Grant Appraisal") is inadmissible hearsay evidence which does not demonstrate that NGS's alterations to the premises have increased the value of the premises.  In addition, contrary to the defendants' assertion, Jay L. Morris, a licensed real estate broker in Connecticut with approximately 20 years of experience in commercial real estate transactions, is qualified to testify why it has been difficult for the plaintiffs' to rent the premises.  Accordingly, the defendants' have failed to demonstrate that the plaintiffs' have not been damaged, and their motion for

20

summary judgment should be denied.

        i)    **The plaintiffs have established the existence of damages sufficient to defeat the defendants motion**

The reply and opposing affidavits submitted in further support of plaintiffs' motion and in opposition to defendants motion, together with the legal issues raised in the previous section of this brief, have established the existence and amount of damages incurred by the plaintiffs sufficient to defeat defendants' motion and position that the plaintiffs' lack damages. The plaintiffs have established, <u>inter alia</u>, the amount of the costs to restore; the absence of economic waste; the amount of the diminished value of the subject premises; the existence of a liquidated damage clause which provides that the measure of damages are the costs to restore; and the absence of any alleged improvements to the premises. For purposes of brevity, the facts and legal arguments raised on plaintiffs' reply, are equally applicable in opposing the defendants' motion, and will not be repeated on this section of the brief, but are specifically incorporated by reference and made a part hereof, for purposes of opposing the defendants motion.

ii)  <u>The defendants' appraisal should be rejected</u>

It  is  well  established  that  a  party  "cannot  rely  on inadmissible  hearsay  in  opposing  a  motion  for  summary judgment"....*Brink v. Union Carbide Corp.*, 2000 U.S. App. LEXIS 7150, 5 (2d Cir. 2000).  The Grant Appraisal is hearsay for several reasons.  First,  the  defendants'  have  failed  to  submit  any supporting affidavits that properly authenticate the appraisal. Second, portions of the Grant Appraisal contain material that can be classified as hearsay.  For example, the Grant Appraisal gives an extensive analysis of the condition of the premises as of June 1, 1999, and the renovations purportedly made to the premises between May - December 1999.  *See* Grant Appraisal at pp. 17-18, annexed to Defendants' Local Rule 56(a)2 Statement at Exhibit L. However, the Grant Appraisal notes that the appraisers only inspected  the  premises  on  <u>June 3, 2002</u>.  *Id.* at  p.  37. Accordingly,  the  defendants'  appraisers  are  not  competent  to testify regarding the condition of the premises and renovations made to the premises <u>before</u> their inspection of the premises as they do not have personal knowledge of these events[3].  It is quite a stretch to assume that the defendants' appraisers can describe the condition of the premises and renovations made years prior to

---

[3]  Indeed, the Grant appraisal states that "<u>[a] representative of the tenant reports</u> the work performed cost approximately..." *See* Grant Appraisal at p. 18.  This portion of the appraisal is clearly hearsay on top of hearsay.

their inspection of the premises. *See also Garcia v. Amaranto,* 2003 Conn. Super. LEXIS 87, 15 (Conn. Super. Ct. Fairfield Dist. 2003 (where the Court noted that the defendant's appraisal and property calculations were both hearsay and raised material factual disputes that required evidentiary proceedings to resolve).

The Grant Appraisal is also inadmissible evidence because it was not timely submitted to opposing counsel by the defendants. Pursuant to the Discovery Schedule agreed to by the parties, and dated January 24, 2003, the defendants were required to submit reports from retained experts to opposing counsel pursuant to Fed. R. Civ. P. 26(a)(2) by **June 27, 2003**. *See* Affidavit of Harry J. Nicolay at ¶. However, the defendants' served the Grant Appraisal on opposing counsel after this deadline on **July 2, 2003.** Therefore, the Grant Appraisal should not be considered as evidence since it was untimely submitted to opposing counsel.

Even if this Court determines that the Grant Appraisal is not hearsay and is admissible, the appraisal fails to demonstrate the defendants' position that the plaintiffs have not been damaged because the premises have increased in value as a result of NGS's alterations. Significantly, the Grant Appraisal glaringly omits several critical considerations. First, the Grant Appraisal does not take into account the market value of the premises, but only the estimated market lease rate of the premises at two different dates. *See* Affidavit of Thomas Sabella dated January 26, 2004 at

23

¶ 34.  In particular, the appraisal does not set forth any specific market value of the premises at any particular date in its restored and unrestored condition.  *Id.*  Second, the Grant Appraisal completely ignores the actual fact that the premises were not able to be rented at all for a period of eleven months, beginning August 1, 2002 through June 30, 2003.  *See* Affidavit of Thomas Sabella dated January 26, 2004 at ¶ 34.  Third, the estimates of market lease rates contained in the Grant Appraisal are inaccurate and do not reflect what a portion of the premises actually rented for following NGS's refusal to restore the premises to the original condition.  *Id.*  For example, the Grant Appraisal estimates that as of June 3, 2002, the market lease rate for the premises with NGS's "improvements" was $8.00 per square foot.  *See* Grant Appraisal, at p. 1 attached to Defendants' Local Rule 56(a)1 Statement at Exhibit L.  However, as of July 1, 2003, only 1/4 of the premises were actually rented to a new tenant at $7.00 per square foot for the first three years, and $7.50 per square foot for the next two years, which are both significantly less than the estimate of $8.00 per square foot referenced in the Grant Appraisal.  *See* Affidavit of Thomas Sabella dated January 26, 2004 at ¶ 34.  Finally, the defendants' appraisal does not demonstrate the diminished value of the premises as a result of the following: (i) NGS's removal of male and female restroom facilities in the premises; (ii) the loss of 1,700 square feet of rentable office space in the mezzanine

following NGS's alterations to the mezzanine; (iii) NGS's installation of a concrete ramp in the middle of the premises; and (iv) the reduction of warehouse space within the premises as a result of NGS's alterations. *Id*. Clearly, the Grant Appraisal should be rejected in its entirety.

**B.   The Testimony Of Jay L. Morris, A Licensed Real Estate Broker in Connecticut, Is Admissible And Demonstrates That The Defendants' Failure To Restore The Premises Caused Plaintiffs' To Lose Rental Income**

The defendants' assertion that Jay. L. Morris (hereinafter referred to as "Mr. Morris"), is neither qualified nor competent to give an opinion as to the value of the premises or as to why the premises have been difficult to rent is without merit. In *Carr v. Burns*, 1990 Conn. Super. LEXIS 1261, 4-5 (Conn. Super. Ct. Tolland Dist. 1990), the Court held that in the absence of a statute that mandated or authorized disqualification, an unlicensed appraiser was not disqualified from being a witness as to real estate values. Moreover, the Court in *Carr*, noted that "witnesses in court as to the values of real estate do not, for that act alone, have to obtain a license as a real estate broker or salesman." *Id*. at 4. Finally, "the court should admit specialized expert testimony if the witness is 'qualified as an expert by knowledge, skill, experience, training or education'...*Nora Beverages, Inc. v. Perrier Group of America, Inc. et al*, 164 F.3d 736, 746 (2d Cir. 1998) (citation to Fed. R. Evid. 702).

25

Here, Mr. Morris, is a licensed real estate broker in Connecticut, who has nearly 20 years of extensive experience with leasing and selling commercial real estate. *See* Affidavit of Jay Morris at  2-7, 11, 13.  Mr. Morris also has extensive experience and knowledge of lease rates and values of buildings in the Rocky Hill, Connecticut area.  *Id.* at 13.  In addition, Mr. Morris completed the University of Connecticut's Real Estate Certification Program, and has taken numerous continuing education seminars and courses in the real estate field for approximately 20 years.  *Id.* at 8-10.  As the Connecticut case law suggests, Mr. Morris need not be a licensed appraiser in order to give his opinion regarding the value of the premises.  Based on Mr. Morris's extensive experience, knowledge, and education in commercial real estate, he is more than qualified to give an opinion as to why the premises have been difficult to rent, especially in view of the fact, that such an opinion directly relates to his occupation as a real estate broker.

The record set forth above indicates that the plaintiffs are entitled to partial summary judgment on the issue of defendants' liability on both causes of action alleged in the complaint, and that the defendants' motion for summary judgment should be denied in its entirety.

26

## Conclusion

By reason of the foregoing, it is respectfully requested that the plaintiffs' motion for partial summary judgment be granted in its entirety; that defendants' motion for summary judgment be denied in its entirety, together with such other, further and different relief as this Court deems just and proper in the circumstances and the costs, disbursements, interest and attorneys fees of this action.

COLLIER, HALPERN, NEWBERG, NOLLETTI
& BOCK, LLP
Attorneys for Plaintiff

By: _____

Harry J. Nicolay
A member of the Firm
One North Lexington Avenue
White Plains, New York 10601
(914) 684-6800
( CT 24875 )

28

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Plaintiffs' Memorandum of Law in Further Support of Plaintiffs' Motion For Partial Summary Judgment and in Opposition to Defendants' Cross-Motion for Summary Judgment has been served upon the following counsel of record by first class mail, postage prepaid this 29th day of January, 2004.

To: Ann H. Rubin, Esq.
    Carmody & Torrance LLP
    195 Church Street, 18th Floor
    P.O. Box 1950
    New Haven, Connecticut 06509-1950

    Duncan R. MacKay, Esq.
    Northeast Utilities Service Company
    P.O. Box 270
    Hartford, Connecticut 06141-0270

    *Courtesy Copy*:
    Chambers,
    The Hon. Holly B. Fitzsimmons
    United States Magistrate Judge
    United States District Court
    District of Connecticut
    915 Lafayette Boulevard
    Bridgeport, Connecticut 06604

    Chambers,
    Honorable Stefan R. Underhill
    U.S. District Judge
    U.S. District Court, District of Connecticut
    915 Lafayette Boulevard, 4th Floor
    Bridgeport, Connecticut 06604

Harry J. Nicolay, Jr. (CT24875)

29