UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
----------------------------------------------------------------X
THOMAS SABELLA and KAREN SABELLA,

                Plaintiffs,

    -against-

NORTHEAST GENERATION SERVICES         Civil Action    2008
COMPANY and NORTHEAST UTILITIES,         Docket No. 3:02CV~~1122~~ (SRU)

                Defendants.
----------------------------------------------------------------X

FILED
2004 JAN 30 P 3:01
US DISTRICT...

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE

### PRELIMINARY STATEMENT

Defendants' instant motion arises more from their dislike of Mr. Sabella's direct language rather than from a substantive issue worthy of this Court's attention. Defendants' challenge reveals that they would prefer opposing an affidavit from a local pipefitter or Arizona park ranger, rather than an attorney who handles the purchase and leasing of property for Hertz, Inc. across the Untied States. Mr. Sabella's extensive personal knowledge relating to real estate in general and, more specifically, the alterations to his building and the substantial adverse impact defendants' changes have had on his ability to re-lease the property, coupled with his law degree, allowed him to submit to the Court a detailed affidavit which identified the underlying facts and specific problems connected with defendants' actions. Rather than providing "conclusory" statements, as defendants allege, Mr. Sabella details eight separate items that defendants installed in the building which can only be corrected or removed at substantial cost. Defendants' challenge to Mr. Sabella's plea that

1

the Court grant plaintiffs' motion for summary judgment, arguing that this request is a legal argument, highlights the absurdity and pointlessness of defendants' motion.

Further, the instant motion is the proverbial tempest in a tea pot. Defendants have essentially conceded and admitted all of the underlying facts. They have acknowledged the lease, the Performance Guaranty and their provisions, they admit that they made substantial changes to the building, they admit that the lease states that they must restore the building to its original condition and they admit that they have refused to do so. *See* Defendants' Local Rule 56(a)2 Statement, dated Dec. 29, 2003 at ¶¶ 2, 4, 5, 8, 10, 17, 18 and 20. For the defendants, the only substantive issue of the case is whether, as a matter of law, they are obligated to perform the provision of the duly executed contract. This motion has no direct correlation to the summary judgment motions and its primary goals appears to be one of harassment.

The motion's resolution rests squarely in the Court's discretion. Most of defendants' challenges lack merit. Occasionally, Mr. Sabella has used language consistent with his training and experience that pushes beyond the average affidavit representations. While the average property owner might state in her affidavit "The lease states the following ...; I asked the tenant to do the following ...; the tenant told me hell would freeze over before he would expend that kind of money to do the following; therefore, the tenant has not done what he said he would do when he signed the lease," Mr. Sabella simply details defendants' failures and then states that defendants' breach caused the following injuries. His utilization of a professional term reflects merely an individual utilizing the words of his trade to detail the events. The Court should fully understand the context of the statements and be able to accept the statements even if Mr. Sabella's words occasionally come from Black's Law Dictionary rather than Webster's Collegiate Dictionary. Plaintiffs believe that the Court is better served reading the affidavit in its entirety and utilizing its context appropriately,

2

rather than running a black marker through a word here and a phrase there. Plaintiffs, accordingly, request that the Court deny defendants' motion in its entirety.

## STATEMENT OF FACTS

Defendants' instant motion to strike portions of the Affidavit in Support [of Thomas Sabella]," sworn to Dec. 8, 2003 ("Sabella Affidavit"), which plaintiffs filed in support of their motion for summary judgment, has created an interconnection between the two motions. Plaintiffs have also filed with the Court "Plaintiffs' Local Rule 56(a)1 Statement, dated Dec. 8, 2003, the "Reply Affidavit and Affidavit in Opposition to Defendants' Cross-Motion [of Thomas Sabella]," sworn to Jan. 26, 2004, the "Reply Affidavit and Affidavit in Opposition to Defendants' Cross-Motion [of Jay L. Morris]," sworn to Jan. 27, 2004 and the "Reply Affidavit and Affidavit in Opposition to Defendants' Cross-Motion [of Gary R. Dayharsh]," sworn to Jan. 19, 2004, as well as two memoranda of law, in support of their motion for summary judgment and in opposition to defendants' cross-motion. Plaintiffs, accordingly, respectfully refer the Court to those papers for the underlying factual aspects of this case.[1] Plaintiffs also submit the Affidavit in Opposition [of Thomas Sabella]," sworn to Jan. 30, 2004 ("Sabella Opp. Affidavit"), to address a specific aspect of defendants' instant Rule 56(e) motion.

---

[1] Plaintiffs incorporate each of these affidavits, and their attached exhibits, as well as the Rule 56 Statement, by reference.

# ARGUMENT

## NO LEGAL OR FACTUAL GROUNDS EXIST TO STRIKE PORTIONS OF PLAINTIFF'S SUMMARY JUDGMENT AFFIDAVIT

Defendants have failed to establish a legal or factual basis which necessitates a granting of their motion to strike portions of the Sabella Affidavit. A party making a motion for summary judgment must submit affidavits based on personal knowledge. Fed. R. Civ. P. 56(e). The Rule further requires the that the affidavit "shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Id.* These affidavits "should not contain argument or conclusions of law. However, an entire affidavit need not be stricken if it includes some inadmissible material. The court may simply disregard the inadmissible material." *Amatulli v. People's Bank*, 917 F. Supp. 895, 904 (D. Conn. 1996). The handling of the motion falls within the discretion of the Court.

Defendants' various challenges to the language of the Sabella Affidavit fail to demonstrate any need for striking language from the document. Defendants challenge various statements as either conclusory, legal argument or made without personal knowledge. An examination of each challenged paragraph on the basis asserted repudiates each attack.

Defendants' opening challenges concern purported "conclusory" statements. Defendants seek to delete eight different paragraphs in their entirety. What defendants fail to advise the Court is that each defendants have merely pulled out portions of the paragraphs, frequently removing the context for each statement. Moreover, defendants never identify what they find conclusory about

4

any of the challenged portions. Indeed, defendants never state that any element of the affidavit is factually inaccurate.

Defendants first question paragraph five, which states: "The premises <u>consists of a commercial building located in an industrial warehouse park and</u> were designed to be used predominately as warehouse space with some retail offices." Sabella Affidavit at ¶ 5 (emphasis added to the portion of the paragraph that defendants omitted in their memorandum).[2] While the statement might be a little general, since it does not specify the buildings total square footage, number of windows, style of flooring and a host of other details a realtor might wish to know, it provides an accurate statement for the Court. Indeed, defendants' challenge seems disingenuous when one reads the paragraph in its entirety, rather than the truncated sentence which defendants provide. Identifying the location of the building, in an industrial warehouse park, explains the design of the building and removes any suggestion that the statement was conclusory.

Defendants' second attack on a purportedly conclusory statement perhaps best illustrates defendants' habit of listing a sentence or statement from a paragraph and request the deletion of the entire paragraph based on their offered fragment. Challenged paragraph 11, stated in full:

> <u>As set forth in the Rule 56(a)1 Statement at ¶¶¶ 10, 11, 12, NG made significant alterations to the premises during its occupancy. In fact, William J. Nadeau, a Vice President at NG, has admitted that NG made alterations to the premises which included the following: removal of the mezzanine; construction of partition areas in the warehouse space of the premises; construction of interior walls; construction of</u>

---

[2] Plaintiffs apologize to the Court for the heavy use of underline emphasis used in this brief. While the appearance is aesthetically unpleasing and the approach one that counsel usually avoids, in this instance underlining best served the need to highlight for the Court the extensive aspect of different paragraphs which defendants omitted from their memorandum. In seeking to strike the entire paragraph, yet only quoting a portion of the paragraph, defendants created an unbalanced and inaccurate impression of the Sabella Affidavit.

5

> <u>a lunchroom; removal of restroom facilities; installation of air conditioning units placed in exterior walls; the consolidation of electric meters; changes to the telecommunications systems; and the installation of a ramp in the middle of the premises.</u> *See* Rule 56(a)1 Statement at ¶12. <u>As I am in possession of the premises, I can confirm that</u> NG made various changes, alterations and modifications to the premises which customized the premises for their unique and exclusive needs, namely, the service and maintenance of electrical power plants.

Sabella Affidavit at ¶ 11 (emphasis added to the portion of the paragraph that defendants omitted in their memorandum). Context, once again, supplies the absent element. Missing from defendants' representation to the Court is the entire recitation of defendants' own admission of the alterations and modifications made and that Mr. Sabella is in possession of the property and has confirmed the changes. Again, defendant has not identified what aspect of the entire paragraph it finds conclusory and why, but a presumption might be made that defendants merely object to the clause "for their unique and exclusive needs." Defendants, however, did not make substantial and costly alterations for someone else's needs; they conducted the renovations prior to moving in for reasons specific to their own use. Again, the paragraph is not conclusory when reviewed and considered in its entirety and no basis exists to strike any aspect of the paragraph.

Defendants' assault on paragraphs 16 and 17 as conclusory defy comprehension. This, no doubt, explains why defendants fail to provide any argument at all or explanation as to why they find the statement conclusory. Paragraph 16 details the three different types of injury that plaintiffs have incurred. *See* Sabella Affidavit at ¶ 16. Specific to one aspect of damages which plaintiff identified in paragraph 16, paragraph 17 then lists eight separate renovations projects that plaintiff must undertake in order to restore the building back to its original condition. *See* Sabella Affidavit at ¶ 17. These two paragraphs itemize the type of damages that plaintiffs have incurred and then breaks

down one of those categories into eight individual parts. Plaintiffs' scope of damages is again specified within paragraph 26; the last paragraph which defendants attack. Each of these paragraphs provides a necessary statement of fact for the Court, detailing the losses that the Sabellas have endured and, accordingly, are appropriate and should not be struck in any way.

Paragraphs 19 and both 20s detail plaintiffs' exasperating difficulties that they have experienced in seeking to re-lease the property in its current condition after defendants' departure. These efforts substantially exceed the small portion that defendants lifted from the affidavit and placed into their motion. Mr. Sabella originally stated:

> <u>In addition, as a result of NG's failure to restore portions of the premises to the original condition,</u> the plaintiffs have had extreme difficulty in re-renting the premises to new tenants primarily because NG's alterations customized the premises for its very unique and specific needs, namely the service and maintenance of electrical power plants. <u>For instance, NG's construction of office cubicles and other modifications in the middle of the warehouse, has caused a reduction in the total available open warehouse space and were placed in locations which make it difficult to use the remaining warehouse space effectively.</u> As a result, this has made it difficult to rent the premises to new tenants who are primarily interested in renting open warehouse space. <u>*See also* deposition testimony of Jay L. Morris regarding the difficulty of re-renting the premises to new tenants as a result of NG's changes to the combination of office space and warehouse space within the premises at p. 143, annexed to the Rule 56 (a)1 Statement and marked thereto as Exhibit R. In addition, the premises lost approximately 1,700 square feet of rentable office space due to NG's removal of the mezzanine level. As a result, plaintiffs can no longer rent out this square footage to new tenants which existed prior to NG's removal of the mezzanine. Finally, I had to replace the male and female bathrooms removed by NG as it is against the law to rent an office suite without restroom facilities. Only recently, as of July 1, 2003, were plaintiffs able to rent approximately 1/4 of the premises to a new tenant, with significant restoration costs incurred by the Plaintiffs. Excerpts from my deposition testimony regarding the difficulty of re-renting the premises at pp. 52-53, are annexed to the Rule 56 (a)1 Statement, and marked thereto as Exhibit Q.</u>

Sabella Affidavit at ¶ 20 (emphasis added to the portion of the paragraph that defendants omitted in their memorandum). Defendants, in making their motion, decided to delete concrete references

to problems, work already performed and the limited success at finding a new tenant in order to fabricate a purportedly conclusory statement. In the end, Mr. Sabella makes each of the statements in the three paragraphs based on his own knowledge and experience accumulated over an 18-month period in his efforts to find a new tenant.

The Court should also reject defendants' efforts to strike four paragraphs as containing legal argument. In almost every instance plaintiff is objecting to a summation statement.[3] The attempt to strike all of paragraph 22 best illustrates needless absurdity of defendants' motion. That paragraph states in full:

> Accordingly, the Plaintiffs' motion for partial summary judgment on liability should be granted <u>since the Plaintiffs have unequivocally established the following: (1) Paragraph (12) of the Lease required NG to restore the premises to the original condition; (2) NG acknowledges that it made the subject alterations to the premises; (3) the Plaintiffs gave repeated and timely notice to NG that it restore the premises; (4) NG has admitted that it has made no efforts to restore the premises; and (5) the Plaintiffs have incurred damages as a result of NG's breach of the Lease.</u>

Sabella Affidavit at ¶ 22 (emphasis added to the portion of the paragraph that defendants omitted in their memorandum). Inexplicably, defendants argue that the relevant part of that paragraph is the opening lead "[A]ccordingly, the Plaintiffs' motion for partial summary judgment on liability should be granted," and that this is an improper legal argument. Initially, the opening clause simply makes a request of the Court to grant the motion, an understandable desire and request from any party

---

[3] Plaintiffs concede that Mr. Sabella's exuberance for the validity of his claim might have stretched the usually permissible scope of an affidavit in paragraph 19, where he opens with the statement that "The proper theory of damages ...." Sabella Affidavit at ¶ 19. Mr. Sabella's brief slip of advocacy, however, will neither distract or confuse the Court. The Court solely possesses, as this Court well knows, the authority to make a final determination on the applicable rule of law for the assessment of damages. This issue frames the cross-motions for summary judgment and the Court can simply read past Mr. Sabella's words without taking a black marker to the opening statement and striking it.

making a motion to the Court. The clause further serves to place the subsequently recited facts in context. Plaintiffs are not listing the five factual points for their own amusement or some other purpose, but to demonstrate the factual basis for their claim and confirm those facts as uncontested. In short, the reference to the pending summary judgment motion in the clause does not make it an improper legal argument and no valid basis exists for the Court to strike the entire paragraph pursuant to Rule 56(e) as an improper legal argument.

Challenged paragraphs 26 and 27 serve the same purpose. Each takes the facts recited in the affidavit and places them within the context of the pending motion for summary judgment and plaintiffs' burden of proof. While defendants' counsel might prefer a pristine affidavit devoid of context and merely supplying a sting of presumptively related facts, plaintiffs take the asserted facts and, in the final two paragraphs connects them with the pending motion to place the relevant facts within the framework of the applicable law. While the paragraphs contain an element of advocacy, they do not dramatically cross the permissible line to the point that the Court needs to strike them from the affidavit.

Neither hearsay challenge to the affidavit survives scrutiny. Defendants challenge paragraph 18's statement, which states:

> <u>On March 3, 2003, I received an estimate from Gary R.Dayharsh, President of Delta Building Corporation, and a competent contractor in the Rocky Hill, Connecticut area regarding the cost to restore portions of the premises to their original condition prior to NG's occupancy.</u> Mr. Dayharsh advised me that the total cost to restore the premises was $283,730.00[4]. <u>A copy of the estimate I received from Mr. Dayharsh is annexed hereto and marked as Exhibit A.</u>

---

[4] <u>Plaintiffs submit this figure merely to show the existence of damages as a result of NG's breach of the lease, and respectfully request that a separate hearing be held by the Court at a later date, in order to determine the actual amount of plaintiffs' damages in this action.</u>

9

Sabella Affidavit at ¶ 22 (emphasis added to the portion of the paragraph that defendants omitted in their memorandum). This statement does not constitute hearsay. As the accompanying footnote confirms, plaintiff did not include this statement to show that the cost to restore the premises will be $283,730, *see* Fed. R. Evid. 801(c)(defining hearsay as a statement "offered in evidence to prove the truth of the matter asserted), but rather to show that plaintiff suffered demonstrable damages and that these damages do not exceed the value of the building. Indeed, plaintiffs' request for a separate hearing on damages, when plaintiff will lay out the necessary foundation to authenticate beyond question all of its numbers, demonstrates that plaintiffs did not supply their business record from Mr. Dayharsh to establish a definitive value on the injuries incurred.

Defendants' attack on the first paragraph 20 further illustrates their tactic to omit key elements of the paragraph in order to concoct a point. Defendants take two sentences out of context from the paragraph and then add "citing deposition testimony of Jay L. Morris," within the statement to create the impression those words also appear in paragraph 20. *See* "Memorandum of Law in Support of Defendants' Motion to Strike," dated Dec. 30, 2003 ("Def. Mem.") at 6. In the affidavit, however, after Mr. Sabella has discussed the difficulty that he has experienced in leasing his property, he adds "*See also* deposition testimony of Jay L. Morris regarding the difficulty of re-renting the premises to new tenants as a result of NG's changes to the combination of office space and warehouse space within the premises at p. 143 ...." Sabella Aff. at ¶ 20. The prefatory "*See also*" indicates to the Court and every other reader, except apparently defendants' counsel, that Mr. Morris's deposition testimony further supports Mr. Sabella's own representations. The statement in paragraph 20 is Mr. Sabella's own and, beyond the advantage of further corroboration, stands free and clear of any hearsay implications.

Defendants' final challenge to the text of the Sabella Affidavit seeks to strike the seventh paragraph because it is not stated on personal knowledge. The paragraph, in full, states: "[u]pon information and belief, NG is engaged in the business of servicing and maintaining electrical power plants." Sabella Affidavit at ¶ 7. As Mr. Sabella explains, while he knew the general statement to be true, he did not possess specific knowledge of the full extent of defendant Northeast Generation Services' ("NG") business operations. *See* Sabella Opp. Affidavit at ¶¶ 4-6. Given the possibility of some technical correction, Mr. Sabella provided this general statement to offer a ready understanding of the defendant's business to the Court. Certainly, defendant's own web site confirms the truth of plaintiffs' original statement. *See Id.*, Exh. A. Although the statement in paragraph 7 may be inconsistent with Rule 56(e), the fact that the statement is true mitigates against any technical need to strike this one sentence from the Sabella Affidavit.

Finally, defendants apparently challenge the use of Jay Morris as an expert; this challenge is without merit. At the outset, defendants' motion is factually wrong. Defendants seek to strike four exhibits because, allegedly, "they contain an opinion regarding the value of the property that is the subject of the parties' dispute ...." Def. Mem. At 7. No such opinion exists within Exhibits H, I, J and R to Plaintiffs' Local Rule 56(a) Statement. Defendants' challenge must fail because it seeks to strike information that is not contained within the challenged exhibits.

Defendants' assault on Mr. Morris's expertise must also fail. Defendants' sole specific objection to the inclusion of Mr. Morris's deposition testimony is that he lacks an appraiser's license of certification. Def. Mem. at 7. Connecticut case law, however, has explicitly recognized that the requisite real estate appraiser's license is not a necessary requirement for an individual to qualify as an expert witness. *See Carr v. Burns*, 1990 Conn. Super. LEXIS 1261 (Conn. Super. Ct. 1990). Moreover, defendants possess full knowledge of Mr. Morris's expertise. Defendants deposed Mr.

11

Morris and heard under oath the extent of his experience, his knowledge as a licensed real estate broker and his first-hand knowledge of the property and Mr. Morris has provided this information to the Court in a supporting affidavit. *See* Sabella Opp. Affidavit, Exh. B. As an individual who has served as the agent for the leasing of other, similar commercial space, who has sought to find a new tenant for the plaintiffs' property and who is a licensed broker in Connecticut, Mr. Morris is fully qualified to serve as an expert witness on the issues relating to the difficulty in re-leasing the property. That testimony, challenged Exhibit R, falls within the scope of Mr. Morris's expertise and should withstand any motion to strike.[5] The remainder of his deposition testimony on the difficulties in re-renting the property arises from first-hand knowledge and his expert training and experience. In short, defendants have failed to offer any valid basis to strike the four exhibits and the Court should deny that aspect of defendants' motion as well.

---

[5] Defendants' position that Mr. Morris's deposition testimony, which is attached as Exhibits H and I to Plaintiffs' Local Rule 56(a)(1) Statement, must be struck as improper expert testimony, Def. Mem. at 7, is, frankly, baffling. The testimony covers issues of fact specific to the changes that defendants made to the property and Mr. Morris's basis of knowledge for the testimony is from his own observations and statements from defendants' own manager. Indeed, despite defendants' representations to the Court in its motion papers, none of the challenged exhibits to the Rule 56(a) Statement offers an appraised value for the building.

## CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully requests that this Court deny defendants' motion in full, together with such other, further and different relief as the Court may deem just and proper in the circumstance and the costs and disbursements of this motion.

Dated: White Plains, New York
       January 30, 2004

                          COLLIER, HALPERN, NEWBERG,
                          NOLLETTI & BOCK, LLP
                          Attorneys for Plaintiffs

By: _____
       Harry J. Nicolay, Jr., Esq.,   (CT 24875)
       a Member of the Firm
       One North Lexington Avenue
       White Plains, N.Y. 10601
       (914) 684-6800

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum of Law in Opposition to the Defendants' Motion to Strike, has been served upon the following counsel of record by Federal Express, this 30th day of January, 2004.

To: Ann H. Rubin, Esq.
Carmody & Torrance LLP
195 Church Street, 18th Floor
P.O. Box 1950
New Haven, Connecticut 06509-1950

Duncan R. MacKay, Esq.
Northeast Utilities Service Company
P.O. Box 270
Hartford, Connecticut 06141-0270

*Courtesy Copy*:
Chambers,
The Hon. Holly B. Fitzsimmons
United States Magistrate Judge
United States District Court
District of Connecticut
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

Chambers,
Honorable Stefan R. Underhill
U.S. District Judge
U.S. District Court, District of Connecticut
915 Lafayette Boulevard, 4th Floor
Bridgeport, Connecticut 06604

_____
Philip M. Halpern (CT 03653)