UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-------------------------------------------------------------X
THOMAS SABELLA and KAREN SABELLA,

            Plaintiffs,

   -against-

NORTHEAST GENERATION SERVICES
COMPANY and NORTHEAST UTILITIES,

            Defendants.
-------------------------------------------------------------X

FILED

2004 JAN 30 P 3:01

**AFFIDAVIT IN OPPOSITION**

Civil Action
Docket No. 3:02CV2008 (SRU)

UNITED STATES DISTRICT COURT   )
                                               )ss.
DISTRICT OF CONNECTICUT          )

    I, Thomas Sabella being duly sworn, depose and state:

    1.    My wife, Karen Sabella and I, (hereinafter the "Plaintiffs" or "Sabellas"), are the plaintiffs in the above-captioned action.

    2.    I submit this affidavit in opposition to defendants' motion to strike all or parts of an affidavit which I have previously submitted to the Court in support of our motion for partial summary judgment.

    3.    To the extent that the Court had any doubt, I made all of the within statements within the "Affidavit in Support [of Thomas Sabella]," sworn to Dec. 8, 2003 ("Sabella Affidavit"), based on personal, first-hand knowledge, with the exception of one statement.

    4.    In the seventh paragraph of the Sabella Affidavit, I stated: "[u]pon information and belief, NG is engaged in the business of servicing and maintaining electrical power plants." Sabella Affidavit at ¶ 7.

-1-

5. Although I was fully aware of defendant Northeast Generation Services ("NG") general role in the utility industry, I did not and do not know the full extent of its business operations. Indeed, it was possible that Northeast Generation Services existed as a holding company and that a company with a similar name actually performed the utility work. Given the possibility that a representation specific to NG's business operations might not be fully correct and given the affidavit's need for only a general statement about what NG does, I prefaced my statement that it was made upon information and belief.

6. Certainly, NG's own website details the broad scope of the company's activities and, in turns, validates my statement in paragraph 7 as true. A copy of the home and services sections of NG's web page are attached as Exhibit A.

7. Defendants' challenge to Mr. Morris's authority as an expert is also without merit.

8. Defendants had the opportunity to depose Mr. Morris and he laid out is credentials and experience at that deposition. Mr. Morris recently specified the scope and extent of his professional experience for the Court. A copy of the "Reply Affidavit and Affidavit in Opposition to Defendants' Cross-Motion [of Jay L. Morris]," sworn to Jan. 27, 2004 is attached as Exhibit B.

9. As with the entirety of defendants' motion, their attack on Mr. Morris's ability to testify as an expert is without merit and the Court should disregard it.

**WHEREFORE**, it is respectfully requested that the defendants' motion to strike be denied in its entirety, together with such other, further and different relief as this Court deems just and proper in the circumstances and the costs, disbursements, interest and attorneys fees of this action.

_____
THOMAS SABELLA

Subscribed and sworn to before me on January 26th, 2004

_____
Notary Public

MARIE PANDOLFO
Notary Public of New Jersey
My Commission Expires Feb. 3, 2005




Corporate Info & Locations | About Our Site |

**COMPREHENSIVE SERVICES FOR POWER AND INDUSTRIAL FACILITIES**

| SERVICES | BROCHURES | CONTACT US | OUR COMPANIES | PROJE |
|---|---|---|---|---|
| One source | See what we can do | Contact the professionals | Working together | A heritage of |



The power compete.

Northeast Generation Services Company / 301 Hammer Mill Road / Rocky Hill, CT 06067

Toll-Free: 1-866-

Services | Brochures | Contact Us | Our Companies | Projects
Corporate Info & Locations | About Our Site | Employment

This is the Web site of Northeast Generation Services Company (NGS).
301 Hammer Mill Road, Rocky Hill, CT 06067
NGS is a wholly-owned subsidiary of Northeast Utilities (NYSE: NU).
© 1996-2003 All Rights Reserved

**Northeast Generation Services**

COMPREHENSIVE SERVICES FOR POWER AND INDUSTRIAL FACILITIES

Corporate Info & Locations | About Our Site |

Home | Services | Brochures | Contact Us | Our Companies | Projects          Search

## Services

### Generation Management

- **Turnkey Operations & Maintenance**
  Fossil Power Plants
  Hydro-electric Plants
  Fuel Cell Facilities
- **Computerized Maintenance Management Systems**
- Facilities We Manage

### Electrical Contracting

- **Power & Control Wiring**
- **Substations & Switchyards**
  Tie-ins & Commissioning
- **High Voltage Distribution Line Work**
- **High Voltage Insulation Termination & Testing**
- **Control Panel Fabrication**

### Project Development & Eng

- **Engineering**
- **Co-gen Evaluations**
- **Feasibility Studies**
- **Turn Key Design/ Build Powe**

### Maintenance Services

- **Outage Support**
- **Project Support**
- **Turbine Overhauls**
- **Predicitive Maintenance**
  Laser Alignment Turbine Balancing
- **Inspections**
- **Evaluations**
- **Service Contracts**

### Facility Services

- **Lighting Systems**
- **Evacualtion Systems**
- **Emergency Alert Systems**
- **Fire Alarms**
- **Cable Installation**
  Coaxial, Data, Fiber Optic, Twisted Pair
  Network, Security, Video & Voice
  Premise Cabling Systems
  Structured Cabling Systems
- **Computer Network Services**
  LAN/WAN Design, Installation & Support
  Network Security
  Wireless Site Surveys & Deployment
  IP Telephony Design, Installation & Support
  IP Call Centers

### Specialty Services

- **Electrical Test**
  Infrared Thermography
  Ultrasonic Corona Detection
  Insulating Oil Testing
  Equipment Calibration
  Hipot Testing
  Preventive Maintenance
  Doble Power Factor Testing
- **Analytical Laboratory**
  Low-Radioactive
  Fuels
  NPDES
  RCRA
  CERCLA
  Inorganics
  Organics
  Hazardous Waste
  NELAC Accredited

Home | Services | Brochures | Contact Us | Our Companies | Projects
Corporate Info & Locations | About Our Site | Employment

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------X

THOMAS SABELLA and KAREN SABELLA,                REPLY AFFIDAVIT AND
                                                 AFFIDAVIT IN OPPOSITION
                                                 TO DEFENDANTS' CROSS-MOTION

               Plaintiffs,


          -against-                        Civil Action Docket
                                                 No. 3:02 CV 2008 (SRU)

NORTHEAST GENERATION SERVICES
COMPANY and NORTHEAST UTILITIES,

              Defendants.

------------------------------------X

STATE OF CONNECTICUT      )
                          )ss.
COUNTY OF HARTFORD        )

    JAY L. MORRIS, being duly sworn, deposes and says:

1. I am over 18 years old, am fully familiar with all of the facts set forth herein, and submit this reply affidavit in further support of the plaintiffs motion for partial summary judgment and in opposition to the defendants' cross-motion for summary judgment.

1

## My Real Estate Experience

2. I am a licensed real estate broker at Owens, Renz & Lee, Co., Inc. (a/k/a., "O, R & L Realtors") and the Managing Director of O,R&L's Hartford County Commercial Real Estate office, located at 2340 Silas Deane Highway in Rocky Hill and serving Hartford, Tolland, and Middlesex Counties.

3. I received my Connecticut real estate sales license in 1982.

4. In 2003, I converted my Connecticut real estate sales license into a Connecticut real estate broker's license.

5. My responsibilities at O, R & L from 1997 to the present include negotiating leases and sales contracts, investment analysis, feasibility studies, opinions of market value, marketing, and both tenant and landlord exclusive representation.

6. Prior to joining O, R & L, I had 15 years experience as a commercial real estate agent in the greater Hartford market, where I consistently earned "Top Producer" status out of more than 120 agents annually since 1987. I have consummated more than $250 million in sales and lease transactions throughout Connecticut.

7. Some of my transactions have included representation for the following: (i) 108,000 square foot office lease for Edwards Supermarkets in Enfield, CT; (ii) 120,000 square foot distribution center for NAMCO in Manchester, CT; (iii) 75,000 square foot retail/distribution center for Bob's Discount Furniture in

2

Manchester, CT; (iv) 135,000 square foot corporate headquarters for Ames Department Stores in West Hartford, CT; (v) 175,000 square foot distribution center for Warner Lambert Corporation in Avon, CT; and (vi) 88,000 square foot office building for Bank of Boston in Wethersfield, CT.

8. I completed the University of Connecticut's Real Estate Certification Program where I received a Major Certificate in Real Estate.

9. In addition to my real estate studies at the University of Connecticut, I have taken courses offered by the CCIM Institute, (a/k/a., "Certified Commercial Investment Member"). The CCIM education program relates to commercial and investment real estate training.

10. I have also taken numerous continuing education seminars and courses in the real estate field for approximately 20 years.

11. I am affiliated with the following associations: (i) National Association of Realtors; (ii) Connecticut Association of Realtors; (iii) Greater Hartford Association of Realtors; and (iv) International Council of Shopping Centers.

12. I am not a certified appraiser however; I have taken courses and seminars in real estate appraisal as part of my real estate certification program at the University of Connecticut, and through a program at the CCIM Institute.

3

13. I have extensive experience with leasing and selling commercial real estate and warehouse properties. I also have extensive experience and knowledge of lease rates and values of buildings in the Rocky Hill, Connecticut area.

14. I am very familiar with the premises at issue located at 273 Dividend Road in Rocky Hill, Connecticut (hereinafter referred to as the "Premises").

15. In the mid-nineties, I worked with plaintiffs' predecessor-in-title, Har-Flan Associates, in order to locate tenants for the premises.

16. I was the real estate agent involved in the sale of the premises to Thomas and Karen Sabella (hereinafter referred to collectively as the "Sabellas") in 2000.

17. In December 2001, I was hired by the Sabellas as the exclusive real estate agent to lease the premises to new tenants following the termination of Northeast Generation Services Company's (hereinafter referred to as "NGS") lease effective July 31, 2002. A copy of the Exclusive Right to Lease Agreement between O, R & L and the Sabellas dated December 1, 2001, is annexed to the Plaintiffs' Local Rule 56(a)1 Statement and marked thereto as Exhibit G.

<u>The Premises</u>

18. I was familiar with the condition of the premises prior to NGS's alterations to the premises.

19. I am familiar with the condition of the premises following NGS's alterations.

20. Prior to NGS's alterations to the premises, the premises contained the following: (i) a second floor mezzanine <u>office</u> of approximately 1,700 square feet with walls, doors, carpeting, electricity, and a stairway; (ii) three separate working electric meters; (iii) open and finished warehouse space; (iv) walls and doors which divided the premises into three separate units which were available for rent; and (v) male and female restroom facilities in the rear unit.  In addition, prior to NGS's alterations, the premises did not contain a large concrete ramp in the middle of the premises or any through wall air conditioning units which damaged and placed holes in the rear warehouse space and walls.

21. Subsequent to NGS's alterations, the premises contained: (i) only one electric meter because NGS converted the power supply from three meters to one (i.e., three units to one unit); (ii) partition areas/interior walls and office cubicles in what was previously open warehouse space; (iii) a large concrete ramp in the middle of the premises; and (iv) through wall air conditioning units in the rear warehouse space.  Following NGS's alterations, the walls, doors, carpeting, electricity, and stairway of the mezzanine were removed and were not replaced.  As a result, the premises also lost approximately 1,700 square feet of <u>rentable</u>

<u>office</u> <u>space</u> on the second floor. In addition, following NGS's alterations, the premises no longer contained walls and doors which divided the premises into three separate rentable units, and male and female restrooms facilities in the rear unit. None of these alterations were restored to their prior condition by NGS.

22. The other alterations to the premises by NGS can only be characterized as over-improvements and were designed for the specific and unique needs of NGS. For example, NGS significantly increased the electrical capacity/power supply of the premises in order to operate their specialized equipment. This type of an alteration to the premises is not required by the vast majority of prospective tenants, and could only benefit a subsequent tenant if that tenant was engaged in the same business as NGS, or had massive power requirements.

23. As the exclusive broker for the premises, I have diligently tried to rent the premises to new tenants. However, to date, I have only been able to find one tenant who has rented 1/4 of the premises as of July 1, 2003.

24. Based upon my real estate experience, a factor attributable to the difficulty in renting the premises is NGS's alterations to, and failure to restore the premises. NGS's alterations to the premises were and are a detriment and hindrance to reletting the premises to most new tenants. Many prospective tenants would not be able to use these alterations, and would have

to incur significant costs to remove them. For example, the majority of commercial tenants that I deal with are seeking a ratio of approximately twenty (20) percent of office space to eighty (80) percent of warehouse space. This is a typical ratio for buildings located in the corporate park that the subject premises is located in. After NGS's alterations, the premises consisted of over fifty (50) percent of office space, and the percentage of prospective tenants that could actually use this combination of space in this corporate park decreased significantly. Over and above the fifty (50) percent of office space, NGS erected partitioned rooms which further reduced the available warehouse space. In other words, NGS changed the entire character of the building from predominantly warehouse space to predominantly office space and partitioned rooms. In addition, NGS's removal of bathrooms from the premises and the removal of 1,700 square feet of mezzanine office space, makes it impossible to rent space that is no longer there. Finally, if two different tenants occupy the front and rear units of the premises, the concrete ramp installed by NGS will be an impediment to the tenant using the warehouse space.

25. Clearly, the renting of the subject premises has been hindered by NGS's alterations and failure to restore the premises as requested by the landlord.

7

WHEREFORE, it is respectfully requested that the plaintiffs' motion for partial summary judgment be granted in its entirety; that defendants' motion for summary judgment be denied in its entirety, together with such other, further and different relief as this Court deems just and proper in the circumstances and the costs, disbursements, interest and attorneys fees of this action.

_____
JAY L. MORRIS
Livingston V. Morris Jr.

Subscribed and sworn to before
me on January 27, 2004

_____
Notary Public

KATHLEEN A. YAGER
NOTARY PUBLIC
MY COMMISSION EXPIRES MAR. 31, 2005

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Affidavit in Opposition, and the Exhibits annexed thereto, have been served upon the following counsel of record by Federal Express, this 30th day of January, 2004.

To: Ann H. Rubin, Esq.
Carmody & Torrance LLP
195 Church Street, 18th Floor
P.O. Box 1950
New Haven, Connecticut 06509-1950

Duncan R. MacKay, Esq.
Northeast Utilities Service Company
P.O. Box 270
Hartford, Connecticut 06141-0270

*Courtesy Copy*:
Chambers,
The Hon. Holly B. Fitzsimmons
United States Magistrate Judge
United States District Court
District of Connecticut
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

Chambers,
Honorable Stefan R. Underhill
U.S. District Judge
U.S. District Court, District of Connecticut
915 Lafayette Boulevard, 4th Floor
Bridgeport, Connecticut 06604

_____
Philip M. Halpern (CT 03653)