## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS SABELLA and KAREN SABELLA, | : | CIVIL ACTION NO. |
| | : | 3:02 CV2008 (SRU) |
| Plaintiffs, | : | |
| | : | |
| VS. | : | |
| | : | |
| | : | |
| NORTHEAST GENERATION SERVICES | : | |
| COMPANY and NORTHEAST UTILITIES, | : | FEBRUARY 11, 2004 |
| | : | |
| Defendants. | : | |

### AFFIDAVIT OF ANN H. RUBIN

I, Ann H. Rubin, being duly sworn, hereby depose and say:

1. I am over the age of 18, and I believe in the obligations of an oath.

2. I am counsel of record for defendants Northeast Generation Services

Company and Northeast Utilities in the captioned case.

3. On or about April 29, 2003, following a request by Melinda Vollmer, who

was then counsel of record for plaintiffs, I agreed to an extension of time for plaintiffs

to disclose their expert witnesses in this case.

4. Attorney Vollmer agreed to a mirror extension for defendant.

5. The letter attached hereto as Exhibit A is a true and correct copy of the

letter I sent to Attorney Vollmer, confirming her request and our agreement.

{N0713712}

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law    Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

6. Attorney Vollmer never indicated to me that she did not agree with the deadlines confirmed in the attached letter.

7. Attached hereto as Exhibit B is a true and correct copy of a letter from plaintiff Thomas Sabella to William Nadeau of Northeast Generation Services Company, concerning the improvements made to the premises by defendants. Plaintiffs' counsel marked this letter as an exhibit at the deposition of William Nadeau in this action. A true and correct copy of the pertinent portion of the transcript of Mr. Nadeau's deposition is attached hereto as Exhibit C.

8. Attached hereto as Exhibit D is a true and correct copy of an excerpt of the transcript of the deposition of Thomas Sabella, taken in this case.

9. Attached hereto as Exhibit E is a true and correct copy of defendants' responses to plaintiffs' first set of interrogatories, served on plaintiffs in this case.

_Ann H. Rubin_

Ann H. Rubin

Subscribed and sworn to before me on
this 11th day of February, 2004.

_Karen A. Sposi_

Karen A. Sposi

~~Commissioner of the Superior Court~~
Notary Public
My Commission Expires: Jan. 31, 2007

CARMODY & TORRANCE LLP     195 Church Street
Attorneys at Law                         Post Office Box 1950
                                         New Haven, CT 06509-1950
                                         Telephone: 203 777-5501

# EXHIBIT A

Post Office Box 1950
New Haven, Connecticut
06509-1950

Telephone 203 777-5501
Facsimile 203 784-3199
arubin@carmodylaw.com

CARMODY & TORRANCE LLP
Attorneys at Law

Ann H. Rubin

April 29, 2003

*BY FACSIMILE AND REGULAR MAIL*

Melinda Vollmer, Esq.
Collier, Halpern, Newberg, Nolletti & Bock, LLP
One North Lexington Avenue
White Plains, NY 10601

Re:    Sabella v. Northeast Generation Services, Inc. et al

Dear Ms. Vollmer:

This will confirm that I have agreed to extend the deadline for plaintiffs to disclose expert witnesses, through and including May 12, 2003. We have also agreed to extend the deadline for disclosure of defendants' experts, through and including July 11, 2003. I intend to depose your experts, and would be available June 2, 3, and 4. Please try to schedule these dates with your witnesses to avoid delays and scheduling problems.

Please call me if you have any questions.

Very truly yours,

Ann H. Rubin

AHR/kas
cc:    Duncan Ross MacKay, Esq.

{N0701494}

```
*********************
***  TX REPORT  ***
*********************


TRANSMISSION OK

TX/RX NO               3260
CONNECTION TEL         6202#1*60#919146846986#
CONNECTION ID
ST. TIME               04/29 09:58
USAGE T                00'27
PGS. SENT              2
RESULT                 OK
```

Post Office Box 1950
New Haven, Connecticut
06509-1950

Telephone:   203 777-5501
Facsimile:   203 784-3199
http://www.carmodylaw.com

# CARMODY & TORRANCE LLP
Attorneys at Law

**Facsimile Transmission**

---

**DATE:** 4/29/03          **TIME SENT:** /0:00          **PAGES (INCLUDING COVER):** 2

**SENT TO:** Melinda Vollmer                    **FAX:** 914-684-6986

**COMPANY:** Collier, Halpern, Newberg, Nolletti &          **TELEPHONE:** 914-684-6800
Bock, LLP

**FROM:** Ann H. Rubin                          **FAX (NEW HAVEN) (203) 784-3199**

**CARMODY & TORRANCE**

**RE:** Sabella v. Northeast Generation Services Company, et al.

**COMMENTS:**

Please see attached.

---

**IMPORTANT**
The information contained in this facsimile transmission is intended for the use of the designated recipients named above. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination or copying of this message is strictly prohibited. If you have

EXHIBIT B

Nadeau

# T & K Management

9 Wren Court, Middletown, NJ 07748
Telephone 732-671-5706

RECEIVED

NOV 2 6 2001

W.J.N.

November 23, 2001

Mr. William J. Nadeau
Vice President and Chief Operating Officer
Northeast Generation Services
273 Dividend Road
Rocky Hill, Ct. 06067

Re: Restoration Obligation
273 Dividend Road
Rocky Hill, Ct. 06067

Dear Mr. Nadeau,

As you know, the lease for the captioned premises, provides in Article 12 regarding improvements made by the Tenant...  " At the end of the lease term the Tenant agrees to restore the premises to original condition, if requested by Landlord".

It is my understanding, the Tenant has expended over $700,000 in improvements. In order to evaluate the restoration, which will be requested by me pursuant to this provision, I will require a complete and detailed listing of all the improvements and their related costs made by Tenant. Perhaps Mr. Donohue, working in conjunction with your construction and accounting departments should prepare such a compilation in as much detail as possible.

For example, a detailed listing of the projects and their component costs such as your removal of the mezzanine area and your conversion of warehouse space to office and or lab space would be helpful. In addition, please provide the details of changes made to existing space. For example, please provide details of costs of improvements to the office space (carpets, painting, electrical, lighting, construction, etc.). Whenever possible, please provide copies plans, permits, contracts, etc.

After I have received the requested information, I will tour the Premises and begin my detailed evaluation of the restoration to be required. At that point I believe it will be appropriate to either meet or discuss via conference call as you suggested in your letter dated October 11, 2001. Please do not make any further changes to the premises (improvements or restoration) without my express written permission.

Very truly yours,

Thomas A. Sabella

# EXHIBIT C

1

2

UNITED STATES DISTRICT COURT

3 DISTRICT OF CONNECTICUT

4 --------------------------------------------x

                                                 :

5 THOMAS SABELLA and KAREN SABELLA,

                                                 :

6                Plaintiffs,

                                  Civil Action

7     -against-                  Docket No.

                             3.02CV1122(SRU)

8

NORTHEAST GENERATION SERVICES COMPANY and   :

9 NORTHEAST UTILITIES,

                                             :

10              Defendants.

                                             :

11 --------------------------------------------x

12       DEPOSITION of the Defendants, NORTHEAST

13 GENERATION SERVICES COMPANY and NORTHEAST

14 UTILITIES, by WILLIAM J. NADEAU, taken by the

15 Plaintiffs, pursuant to Notice, held at the

16 offices of Carmody & Torrance, LLP, 195 Church

17 Street, New Haven, Connecticut, on May 19, 2003,

18 at 10:25 a.m., before a Notary Public of the

19 State of New York.

20

21

22 ************************************************

        BARRISTER REPORTING SERVICE, INC.

23              120 Broadway

            New York, N.Y. 10271

24             212-732-8066

25

1                    Nadeau

2        testified he understood a claim was

3        asserted.

4            The case law tracks the party's

5        understanding of whether a claim had

6        been asserted, and then, of course,

7        you have the attorney-client privilege

8        once he went to counsel.

9            MS. VOLLMER:  We should leave it

10        for the Court.

11            MS. RUBIN:  Fine.  Fine.

12            MS. VOLLMER:  Mark this as

13        Exhibit G, Plaintiffs' Exhibit G,

14        letter dated November 23, 2001 to Mr.

15        Nadeau from Mr. Sabella.

16            (Whereupon a letter from Mr.

17        Sabella to Mr. Nadeau dated November

18        23, 2001 was marked as Plaintiffs'

19        Exhibit G for identification as of

20        today's date.)

21 Q.    Mr. Nadeau, have you had a chance to

22 review what was marked as Plaintiffs' Exhibit

23 G for identification?

24 A.    Yes, I have.

25 Q.    Do you recognize it?

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


- - - - - - - - - - - - - - - - -X
THOMAS SABELLA and                 :
KAREN SABELLA,                     :
              Plaintiffs           :
                                   :
VS                                 : 3:02CV2008(SRU)
                                   :
NORTHEAST GENERATION SERVICES      :
COMPANY and NORTHEAST UTILITIES,   :
              Defendants           :
- - - - - - - - - - - - - - - - -X


            of deposition THOMAS SABELLA taken at the
            offices of Collier, Halpern, Newberg,
            Nolletti & Bock, 1111 Summer Street,
            Stamford, Connecticut, before Audra Quinn,
            RPR, Licensed Shorthand Reporter #106, and
            Notary Public, in and for the State of
            Connecticut on June 27, 2003, at 11:00 a.m.



            DEL VECCHIO REPORTING SERVICES, LLC
            PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE                 100 PEARL ST., 14th FL.
MADISON, CT 06443               HARTFORD, CT 06103-4506
   203 245-9583                      800 839-6867

1    his opinion and I understood his opinion and I give

2    broker's opinion not a lot of weight.

3         Q    By the way, how much money did you understand

4    that Northeast Generation had spent on doing the work

5    to the building at Dividend Road?

6              MR. NICOLAY:  Objection to form, but you

7         can answer.

8         A    It was my understanding that they spent

9    approximately $700,000.

10   BY MS. RUBIN:

11        Q    You considered that to be a lot of money for

12   a tenant to spend on a building that it didn't own,

13   didn't you?

14             MR. NICOLAY:  Objection to form.

15        A    I considered it to be a substantial amount of

16   money, not outrageous, but not a small amount by any

17   amount.

18        Q    Now, you indicated a minute ago that

19   Mr. Morris expressed to you his opinion that Northeast

20   Generation had made these modifications to the building

21   and made this investment to the building that caused

22   him to believe that they were likely not to terminate

23   and likely to renew in accordance with the lease.

24   Right?

25        A    That's correct.

1      Q   And you indicated that you took that opinion

2  for what it was worth to you.  Right?

3      A   That's correct.

4      Q   Did you have your own opinions about whether

5  Northeast Generation Services was likely to terminate

6  the lease or decline to renew as provided in the

7  lease?

8      A   I had my own opinion that -- my opinion was

9  that they had spent $700,000, that it was a strong

10  inducement you would think for them to stay, but that

11  there was certainly no assurance that they would stay.

12  Corporations make funny decisions.

13      Q   Did you ever talk with anyone from Northeast

14  Generation Services or Northeast Utilities before you

15  bought the property about their intentions with respect

16  to the Dividend Road property in the future?

17      A   I don't think so, no.

18      Q   Did you consider doing that?

19      A   No.  It's not my style.

20      Q   Why not?

21      A   Because I don't believe what people will tell

22  me.  People should do -- people can do everything that

23  the lease allows them to do.  So what they tell me or

24  not is of little opinion.  I knew they would never sign

25  a guarantee that they would stay.  It wasn't in their

71

1  | interest.  So what somebody would tell me is of little
2  | value to me.  I rely on lease document.
3  |      Q    And is that a position that you have taken
4  | with respect to all of your real estate investments?
5  |      A    Generally, yes.  I believe the time to
6  | negotiate is prior to the time that you enter into a
7  | deal, and once you have a deal people will do what the
8  | deal allows them to do in a written lease document.
9  | So, yes, you know, I don't look for extraneous opinions
10 | about what someone may or may not do.  I try to form my
11 | own opinion.
12 |      Q    And in order to form your own opinion, you
13 | gather information.  Right?
14 |      A    That's correct.
15 |      Q    Do you have any idea what the property at
16 | Dividend Road looked like at the time that Northeast
17 | Generation Services took possession of it?
18 |      A    None, no.
19 |      Q    Have you ever seen any photographs of what it
20 | looked like?
21 |      A    Not that I recollect, except for the
22 | photograph which was given to me at closing which I
23 | have no idea when that picture was taken.
24 |      Q    Has anyone ever told you what the building at
25 | Dividend Road looked like before Northeast Generation

1    took possession?

2        A    No.

3        Q    You never talked with Mr. Morris about that?

4        A    No.

5        Q    What did that building look like just prior

6    to the time that you bought it?

7        A    What did it look like?

8        Q    Yes.

9               MR. NICOLAY:  Objection to form.

10       A    I'm not quite sure.  It looked like a

11   building.  I'm not quite sure how to answer your

12   question.  Can you be more particular in your question?

13       Q    Well, you looked at the exterior of the

14   building?

15       A    I toured the exterior and the interior of the

16   building.

17       Q    And how would you describe the exterior of

18   the building in terms of how it was kept?

19       A    It was okay.  Not great, but not in poor

20   condition.  There was some areas that could have been

21   spruced up, but it was okay, the exterior.

22       Q    What in the exterior could have been spruced

23   up?

24       A    The landscaping was a little shabby in my

25   opinion.  There was some preferred kind of maintenance

1    around doors and whatever. Nothing major, but I've

2    seen better maintained buildings and I've seen worse

3    maintained buildings.

4         Q    And how would you describe the level of

5    maintenance in the interior of the building at that

6    time and that's just before you bought it?

7         A    The interior was very well maintained on the

8    interior. The interior was, I think, to a higher

9    standard than the exterior.

10        Q    Would you say that the interior of the

11   building was new or recently refurbished?

12        A    Different parts of it were. The office space

13   appeared to have been recently painted and carpeted,

14   things of that nature, lights. The front office space

15   in particular. It was evident that they had built a

16   lot of these cubicles out in the warehouse space

17   recently. So that stuff was relatively new.

18             Mr. Donohue showed me, you know, some of the

19   electrical panels on tour. So some money was spent by

20   them because of their special needs for electrical

21   things because they were testing pieces of machinery.

22   So they needed different electrical than was at the

23   building, so apparently they spent some money on that.

24   It was clear that there was new electrical panels.

25             So I toured, again, the interior of the

1    building twice I think prior to purchasing and

2    convinced myself that they probably had spent $700,000.

3        Q    Well, what was the nature or the capacity of

4    the electric service to the building at the time that

5    you bought it?

6        A    I really couldn't tell you with any

7    precision. It's not an area that I'm very technical

8    in, but it apparently -- since they were an electric

9    utility, an electric company and were doing this

10   testing, and Mr. Donohue was proud of what he had, I

11   assumed that he had something worthwhile, but beyond

12   that I couldn't tell you.

13       Q    Do you have any information about what the

14   electrical service to the building was before Northeast

15   Generation Services made the improvements to the

16   service?

17       A    No, but I can assume it was different than

18   what Mr. Donohue was showing me. I assume they did

19   something for the -- some upgrading of the electrical

20   service for their needs.

21       Q    At the time that you bought the building, who

22   was responsible for the interior maintenance on the

23   space?

24       A    At the time I bought the building the tenant

25   was responsible.

EXHIBIT E

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

-----------------------------------------------------------------X

THOMAS SABELLA and KAREN SABELLA,

                                   Civil Action
           Plaintiffs               Docket No. 3:02CV1122 (SRU)

-against-

NORTHEAST GENERATION SERVICES
COMPANY and NORTHEAST UTILITIES,         March 5, 2003

                        Defendants.

-----------------------------------------------------------------X

### DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

    **PLEASE TAKE NOTICE** that pursuant to Rule 33 of the Federal Rules of Civil

Procedure, plaintiffs, Thomas Sabella and Karen Sabella, hereby request that each of the

defendants Northeast Generation Services Company and Northeast Utilities, answer the

following interrogatories.

    **PLEASE TAKE FURTHER NOTICE** that the definitions set forth in Local Civil Rule

39, Local Rules of Civil Procedure for the United States District Court, District of Connecticut,

are incorporated by reference into these interrogatories.

**Interrogatories:**

    1.    Please identify the names and addresses (if known) of any witnesses with

knowledge or information relevant to the subject matter of this action, including without

limitation any witness with knowledge or information concerning:

    a)    certain lease, dated May 13, 1999, between HAR-FLAN ASSOCIATES and

        Northeast Generation Services, Inc., dated May 13, 1999 (hereinafter referred to

{N0699197}

as "the Lease") for the premises located at 273 Dividend Road, Rocky Hill,

Connecticut (hereinafter referred to as "the Premises");

(b)    a certain Performance Guaranty of Northeast Generation Services, Inc., dated June

11, 1999, executed by defendant Northeast Utilities (hereinafter referred to as

"NU");

(c)    the condition of the Premises at the commencement of the Lease term;

(d)    tenant improvements made by or on behalf of defendant Northeast Generation

Services Company (hereinafter referred to as "NGS") at the Premises;

(e)    the condition of the Premises at the end of the Lease term;

(f)    any efforts by NGS or NU to remove any tenant improvements made by or on

behalf of NGS at the Premises or to restore the Premises to original condition

(g)    the allegations contained in defendants; Second Affirmative Defense that the

plaintiffs' claims are barred by the doctrine of unjust enrichment;

(h)    the contract between NGS and plaintiffs referred to in defendants' Third

Affirmative Defense and defendants' allegation that NGS is not in breach of that

contract; and

(i)    defendants' Performance Guaranty with plaintiff referred to in defendants' Fourth

Affirmative Defense and defendants' allegation that defendants are not in breach

of that performance guaranty.

**RESPONSE:**

(a)   **James P. Donohue** – Northeast Generation Services Company, 301 Hammer Mill Road, Rocky Hill, CT 06067
**William J. Nadeau** – Northeast Generation Services Company, 301 Hammer Mill Road, Rocky Hill, CT 06067
**Elizabeth A. Maldonado** – Northeast Utilities Service Company, 107 Selden Street, Berlin, CT
**Richard W. O'Neil** (retired) – Northeast Utilities Service Company, 107 Selden Street, Berlin, CT
**Mr. John Flannigan** (partner  HAR-FLAN ASSOCIATES) – address unknown
**Mr. Peter Harding** (partner HAR-FLAN ASSOCIATES) – resides in Rocky Hill, CT
**Attorney for HAR-FLAN ASSOCIATES – Richard Sullman** – address unknown.

(b)   **James P. Donohue** – Northeast Generation Services Company, 301 Hammer Mill Road, Rocky Hill, CT 06067
**Christine Ferrell** – Northeast Utilities Service Company, 107 Selden Street, Berlin, CT

(c)   **James P. Donohue** – Northeast Generation Services Company, 301 Hammer Mill Road, Rocky Hill, CT 06067
**William J. Nadeau** – Northeast Generation Services Company, 301 Hammer Mill Road, Rocky Hill, CT 06067
**Douglas P. Struthers** – Northeast Utilities Generation Services Company,  301 Hammer Mill Road, Rocky Hill, CT
**Richard W. O'Neil** (retired) – Northeast Utilities Service Company, 107 Selden Street, Berlin, CT
**Mr. John Flannigan** (partner  HAR-FLAN ASSOCIATES) – address unknown
**Mr. Peter Harding** (partner HAR-FLAN ASSOCIATES) – resides in Rocky Hill, CT
**Michael Kirdzik**, Standard Builders, 52 Holmes Road, Newington, CT.
**David Woodard** – DEW Architects, 41-B New London Turnpike, P.O. Box 758, Glastonbury, CT
**Steve Leighton**, - DEW Architects, 41-B New London Turnpike, P.O. Box 758, Glastonbury, CT

(d)     **James P. Donohue** – Northeast Generation Services Company, 301 Hammer Mill Road, Rocky Hill, CT 06067

        **William J. Nadeau** – Northeast Generation Services Company, 301 Hammer Mill Road, Rocky Hill, CT 06067

        **Douglas P. Struthers** – Northeast Utilities Generation Services Company, 301 Hammer Mill Road, Rocky Hill, CT

        **Mr. John Flannigan** (partner HAR-FLAN ASSOCIATES) – address unknown

        **Mr. Peter Harding** (partner HAR-FLAN ASSOCIATES) – resides in Rocky Hill, CT

        **Michael Kirdzik**, Standard Builders, 52 Holmes Road, Newington, CT.

        **David Woodard** – DEW Architects, 41-B New London Turnpike, P.O. Box 758, Glastonbury, CT

        **Steve Leighton**, - DEW Architects, 41-B New London Turnpike, P.O. Box 758, Glastonbury, CT

(e)     **James P. Donohue** – Northeast Generation Services Company, 301 Hammer Mill Road, Rocky Hill, CT 06067

        **William J. Nadeau** – Northeast Generation Services Company, 301 Hammer Mill Road, Rocky Hill, Ct 06067

        **Douglas P. Struthers** – Northeast Utilities Generation Services Company, 301 Hammer Mill Road, Rocky Hill, CT

(f)     **James P. Donohue** – Northeast Generation Services Company, 301 Hammer Mill Road, Rocky Hill, CT 06067

(g)     **Arnold Grant**

(h)     **James P. Donohue**– Northeast Generation Services Company, 301 Hammer Mill Road, Rocky Hill, CT 06067

(i)     **James P. Donohue**– Northeast Generation Services Company, 301 Hammer Mill Road, Rocky Hill, CT 06067

2.     Please identify those documents in existence relevant to interrogatory number 1

above including 1(s) through 1(i), and provide:

     (a)     the name and address of the custodian(s) of such documents'

     (b)     the locations(s) of such documents; and

     (c)     a general description of such documents.

**RESPONSE:**

See non-privileged documents produced in response to Request for Production. Privileged documents are identified on privilege log produced in response to Request for Production.

3.     Please describe all tenant improvements made to the Premises pursuant to the

Lease.

**RESPONSE:**

See documents produced in response to Request for Production. In general, the tenant improvements included construction of offices and conference rooms and the conversion of portions of warehouse space to office space. In addition, as part of the improvements, permanent upgrades to the building were made. These permanent upgrades include:

1)     Category 5 voice and data wiring throughout the building;
2)     Electrical service at 1100 Amps, 480 Volts and complete new electrical wiring throughout the building;
3)     Handicap accessible bathrooms for both Men and Women;
4)     New HVAC system;
5)     A lunchroom that will meet the needs of at least 20 employees at any one time;
6)     Elimination of code deficiencies relating to internal structures;
7)     A sprinkler system that meets current codes and standards;
8)     Improved lighting throughout the building;

4.     Please identify those documents in existence relevant to interrogatory number 3

above and provide:

(a)     the name and address of the custodian(s) of such documents;

(b)     the location(s) of such documents; and

(c)     a general description of such documents.

**RESPONSE:**

See documents produced in response to Request for Production of Documents.

5.      Please describe any and all efforts made by or on behalf of either NGS or NU to restore the Premises to original condition at the end of the Lease term and identify upon whose behalf said efforts were made.

**RESPONSE:**

No efforts were made to restore the Premises.

6.      Please identify those documents in existence relevant to interrogatory number 5 above and provide:

(a)     the name and address of the custodian(s) of such documents;

(b)     the location(s) of such documents; and

(c)     a general description of such documents.

**RESPONSE:**

Not applicable.

## DEFENDANT'S CERTIFICATION

I hereby certify that I have reviewed the above Interrogatories and responses

thereto and that they are true and accurate to the best of my knowledge and belief.

James P. Donohue

Subscribed and sworn to before me this 4th day of March 2003.

Notary Public
My commission expires:

**TAMARA NICOLE GAGNON**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES MAR. 31, 2005

DEFENDANTS,
NORTHEAST GENERATION SERVICES COMPANY and
NORTHEAST UTILITIES

By: _Ann H. Rubin_

Ann H. Rubin
Federal Bar No. ct04486
Carmody & Torrance LLP
195 Church Street; 18th Floor
P.O. Box 1950
New Haven, CT 06509-1950
Telephone: 203-777-5501
Facsimile: 203-784-3199
E-mail: arubin@carmodylaw.com
Its Attorneys

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing has been served on the following

counsel of record by first class mail, postage prepaid on the above written date to:

Philip M. Halpern, Esq.
Collier, Halpern, Newberg, Nolletti & Bock, LLP
970 Summer Street
Stamford, CT  06905
Phone: 203 348-5255
Email: phalpern@chnnb.com


Duncan Ross MacKay, Esq.
Northeast Utilities Service Company
P.O. Box 270
Hartford, CT  06141-0270
Phone: 860 665-3495
Fax: 860 665-5504
Email: mackadr@nu.com


Ann H. Rubin