UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------------X
THOMAS SABELLA and KAREN SABELLA,

     Plaintiffs,

   -against-

NORTHEAST GENERATION SERVICES   Civil Action
COMPANY and NORTHEAST UTILITIES,   Docket No. 3:02CV1122 (SRU)

     Defendants.
------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO STRIKE THE APPRAISAL AND
CERTAIN PARAGRAPHS OF DEFENDANTS' RULE 56 STATEMENT**

   Hearsay and other faults undermines defendants' submitted appraisal and necessitates the striking of that document during this Court's consideration of the opposing motions for summary judgment. One can observe the hearsay inherent to the report from the outset. The appraisers offer an assessment of the condition of the building at 273 Dividend Road, Rocky Hill, CT (the "Premises") for June 1999, even though they acknowledge that their visit to the premises occurred three years later. Likewise, the appraisers have offered general numbers for the rent of the building without attributing any source to those numbers. The appraisers failed to document in any way the alleged lease rates for neighboring buildings or justified the 18-month old lease rates which defendants offer to the Court. The use of single and double hearsay comments throughout the appraisal justifies the striking of that document for consideration in support of defendants' motion for summary judgment, as well as five paragraphs within defendants' Rule 56 Statement, which restates or relies upon inadmissible elements of the appraisal.

-1-

## STATEMENT OF FACTS

The Court possesses full knowledge of the underlying facts in this case and plaintiffs Thomas and Karen Sabella respectfully refer the Court to the affidavits and Rule 56 Statements which they have filed with the Court in connection with the pending cross-motions for summary judgment.[1] This litigation centers on defendants' failure to restore the Premises to its original condition as they obligated themselves to do under the lease which they executed.

The instant motion seeks to strike a document that defendants have provided to the Court as an exhibit to their Rule 56 Statement. *See* Local Rule 56(a)(1) Statement of Northeast Generation Services Company and Northeast Utilities in Support of Their Cross-Motion for Summary Judgment," dated Dec. 29, 2003 (Def. Rule 56 Statement"), Exhibit. L (the Grant Appraisal"). Plaintiffs also seek to strike paragraphs 17-20 and 27 of the Def. Rule 56 Statement, which are founded and reliant on the information within the Grant Appraisal. For the Court's convenience, plaintiff has isolated both the Grant Appraisal and defendants' Rule 56 Statement, respectively as Exhibits A and B, in the accompanying "Affidavit in Support [of Harry J. Nicolay, Jr.]," sworn to February 13, 2004 ("Nicolay Aff."). As detailed below, the Grant Appraisal contains substantial statements based on inadmissible hearsay information and, therefore, should not be before this Court on the pending cross-motions for summary judgment.

---

[1]      Plaintiffs adopt and incorporate by reference "Plaintiffs' Local Rule 56(a)1 Statement, dated Dec. 8, 2003, Affidavit in Support [of Thomas Sabella]," sworn to Dec. 8, 2003, the "Reply Affidavit and Affidavit in Opposition to Defendants' Cross-Motion [of Thomas Sabella]," sworn to Jan. 26, 2004, the "Reply Affidavit and Affidavit in Opposition to Defendants' Cross-Motion [of Jay L. Morris]," sworn to Jan. 27, 2004  and the "Reply Affidavit and Affidavit in Opposition to Defendants' Cross-Motion [of Gary R. Dayharsh]," sworn to Jan. 19, 2004.

**ARGUMENT**

**THE COURT SHOULD STRIKE THE INADMISSIBLE
APPRAISAL AND THOSE STATEMENTS THAT RELY UPON IT**

The Grant Appraisal stands outside the scope of admissible evidence and, accordingly, cannot support either defendants' cross-motion for summary judgment or their opposition to plaintiffs' motion for partial summary judgment. Pursuant to Rule 104(a), the court must evaluate evidence for admissibility before it considers that evidence in ruling on a summary judgment motion. Fed. R. Evid. 104. The Court may consider only evidence that would be admissible at trial when it considers summary judgment motions. *Samuels v. Doctors Hosp., Inc.*, 588 F.2d 485, 486 n. 2 (2d Cir. 1979). A document is not admissible if it contains hearsay testimony. Fed. R. Evid. 802. *See also H. Sand & Co. V. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991). Likewise, the Court will not consider and reject as inadmissible a document that summarizes documents that are not already in evidence or otherwise admissible. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993). *See also* Fed. R. Evid. 1006 (applying to voluminous writings which cannot be conveniently examined). The Court shall strike or otherwise ignore such evidence when it seeks to resolve a summary judgment motion, as well as any statements in an affidavit that is founded or otherwise reliant on inadmissible evidence. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)(holding that evidence submitted outside of the pleadings must be competent).

The Grant Appraisal contains a substantial series of "facts" founded in hearsay.[2]  Initially, the appraisals' representations concerning the condition and status of the Premises in June 1999. The appraisers acknowledges that they did not visit the Premises until June 2002, Grant Appraisal at 5, yet provides an extensive discussion of the condition of the building in 1999, and the alterations that defendants made to the building.  *See Id.* at 17-19.  The appraisers lack any first-hand knowledge of actual work performed and appear to base their understanding on representations from various individuals and their own best guess.  *See Id.* At 2 (stating that the "appraisers' analyses, opinions and conclusions are true and correct to the best of the appraisers' knowledge and belief"). The information within the Grant Appraisal is fraught with error and beyond the trust of the Court. The appraisers' observation that defendants' representative place defendants' improvement expenditures at $1,200,000 or $42.55 per square foot, while the appraiser's research estimates the work at $540,000 or $19.15 per square foot, *id.* at 18, reflects the inherent unreliability of the information.  The appraisers' use of unadmitted and unproduced documents to make a variety of other unsubstantiated statements[3] further undermine the admissibility and reliability of the report.

The primary failing of the Grant Appraisal, however, lies in its use of undocumented contracts between non-parties to manufacture past lease rates.  The Grant Appraisal concludes with a three-page listing entitled "Estimate of Market Lease Rate," *id.* at 29-31, and this information

---

[2]     In simply offering the Grant Appraisal as an attachment to the Def. Rule 56 Statement, defendants have failed to demonstrate the admissibility of the appraisal, or its reliability.

[3]     Curiously, the appraisers utilized various identified municipal permits for their calculations.  Grant Appraisal at 18, 21.  The Court, of course, has no way to know whether the appraisers have unearthed all applicable permits or if the stated estimate for the work performed bares even a reasonable correlation with the actual work performed.  Indeed, the appraisers' representation that they have listed the applicable permits, without actually providing a copy of each permit, asks the Court to accept their unsubstantiated representation despite having no first-hand knowledge about what permits defendants obtained or used.

appears to be the basis for the appraisal's "Estimated Market Rents." *Id.* at 1. The Grant Appraisal, however, fails to provide any explanation for the source of the lease rate information, be it review of the identified lease contracts or a chat at the water cooler.[4] The information is inadmissible hearsay because defendants and the appraiser offer the information concerning the 24 different properties for the truth of the information contained within each statement. Indeed, the offered information concerning purported lease rates per square foot seems critical to defendants and their defense against plaintiffs' motion for summary judgment. *See* Def. Rule 56 Statement at ¶ 27 (stating, in part, that the Grant Appraisal "demonstrates the improvements redound to the benefit of the plaintiffs in the market lease rate). The information also fails to meet the criteria for admissibility because defendants have failed to introduce each and every specified contract into evidence and provided a sufficient foundation to insure the admissibility of each document. The appraisers' statements reflect an impermissible summary of documents not in evidence and, accordingly, the information is inconsistent with the Rules of Evidence, inadmissible and should fall beyond the scope of the Court's legitimate consideration.

All the Court possesses at this time is a three-page summary of 24 alleged lease agreements, but that information lacks any indicia of reliability. The appraisers have provided an inspiring array of information about various properties, including their square footage, lease rate and various terms of their lease contracts, yet failed to attribute the information to any source. While seeking to dazzle the reader with data, the responding question concerns, even presuming for a brief moment the accuracy of the representations, what other information is missing. Do the leases contain any other

---

[4] The appraisers do occasionally highlight the hearsay source of his information. *See Id.* at 30 (noting that "[t]he same broker reports ..."), but typically fail to identify the source for any of his information. *See generally Id.* at 29-31.

cost measures and fee requirements?  Were the landlords actually leasing out their buildings for three to ten years at flat rates without annual increases in the monthly rent?  What is the condition of the various buildings (did the appraiser ever visit one of these other properties)?  Since the appraisers failed to provide its underlying data, the Court cannot know.  The lack of any reliability to the asserted numbers necessitates that the Court strike the Grant Appraisal, Exhibit L, from defendants' Rule 56 Statement, as well as paragraphs 17 through 20 and 27 of the Rule 56 Statement, which either reassert or rely upon the inadmissible content of the Grant Appraisal.


## CONCLUSION


The Sabella's request that the Court strike the Grant Appraisal from the defendants' Rule 56 Statement, Exhibit L, as well as paragraphs 17 through 20 and 27, which are wholly founded on that document.  While the document certain presents a credible appearance, much of the information within the document remains unsubstantiated.  The plaintiffs, accordingly, request that the Court grant their motion in full, , together with such other, further and different relief as the Court may deem just and proper in the circumstance and the costs and disbursements of this motion.


Dated:  White Plains, New York
        February 13, 2004


                             COLLIER, HALPERN, NEWBERG,
                             NOLLETTI & BOCK, LLP
                             Attorneys for Plaintiffs


                  By:  _____
                             Harry J. Nicolay, Jr., Esq.,
                              a Member of the Firm

One North Lexington Avenue
White Plains, N.Y.  10601
(914) 684-6800